UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALEXANDRA MATALAVAGE,

                                    Plaintiff,                          DECISION
                                                                              and
                              v.                                          ORDER

SHERIFF OF NIAGARA COUNTY,                          20-CV-1254Sk(F)
COUNTY OF NIAGARA, NEW YORK,
MICHAEL FILICETTI, and
KEVIN PAYNE,

                                    Defendants.
_____

APPEARANCES:              ANNA MARIE RICHMOND, ESQ.
                                    Attorney for Plaintiff
                                    2500 Rand Building
                                    14 Lafayette Square
                                    Buffalo, New York  14203

                                    TOMMANEY LAW PLLC
                                    Attorneys for Plaintiff
                                    ELIZABETH M. TOMMANEY, of Counsel
                                    2500 Rand Building
                                    14 Lafayette Square
                                    Buffalo, New York  14203

                                    BOND, SCHOENECK & KING, PLLC
                                    Attorneys for Defendants
                                    MICHAEL E. HICKEY, and
                                    RIANE F. LAFFERTY, of Counsel
                                    Avant Building
                                    200 Delaware Avenue
                                    Suite 900
                                    Buffalo, New York  14202

**<u>JURISDICTION</u>**

This case was referred to the undersigned by Honorable William M. Skretny on

November 17, 2020, for all pretrial matters.  The matter is presently before the court on

Plaintiff's motions to compel discovery filed on August 12, 2022 (Dkt. 36), October 7, 2022 (Dkt. 44), and November 15, 2022 (Dkt. 50).

## BACKGROUND and FACTS[1]

In this action seeking damages for employment discrimination, Plaintiff Alexandra Matalavage ("Plaintiff" or "Matalavage") alleges that while employed as a correction officer in Niagara County Jail ("the Jail"), from 2009 until February 11, 2020, she was repeatedly subjected to a pattern of disparate treatment based on her sex and gender including disciplinary actions and denial of promotional advancements, and that when Plaintiff scored among the top three of a civil service examination which required Defendants consider Plaintiff for promotion when an opening occurred, Defendants commenced a criminal investigation of Plaintiff because employees under a criminal investigation may not be considered for promotion.  The criminal investigation concerned an alleged routine audit of Defendants' written procedures for Electronic Supervisory Round Review ("ESRR") regarding, *inter alia*, the practices Jail employees are to follow in conducting rounds of the Jail and reporting information pertaining to each round.  In particular, the routine audit determined electronically recorded "swipes" of Plaintiff's identification card ("ID card") at the Jail's access control panels ("time swipes") did not correspond to the rounds' entries Plaintiff posted.  Plaintiff further alleges that she was subsequently subjected to retaliation including and constructive discharge from her employment.

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

Defendants' criminal investigation of Plaintiff commenced in April 2019, and Plaintiff first received notice of the investigation on April 9, 2019.  On April 22, 2019, Plaintiff filed the first of three administrative complaints with the Equal Employment Opportunity Commission ("EEOC"), complaining female employees were subjected to disparate treatment at the Jail and that Defendants had commenced a criminal investigation against Plaintiff to prevent Plaintiff, a female, from applying for a promotional opportunity for which Plaintiff, based on her performance on the requisite civil service examination, was eligible because employees under investigation are ineligible for consideration for promotion ("First EEOC Charge").[2]  According to Plaintiff, on June 25, 2019, Plaintiff's union representative advised the EEOC that if Plaintiff dropped her first administrative charge and signed a "last chance agreement," Defendants would drop the criminal investigation and suspend Plaintiff for 60 days without pay.  Plaintiff then filed another administrative complaint with the EEOC ("Second EEOC Charge"), asserting Plaintiff was subjected to additional retaliation for filing the First EEOC Charge.[3]  On August 29, 2019, Plaintiff filed yet another EEOC administrative complaint ("Third EEOC Charge"),[4] asserting she was subjected to additional retaliation for filing the first two EEOC charges.  Defendants, including the County of Niagara, New York ("County"), Sheriff of the County of Niagara ("Sheriff"), Michael Filicetti ("Filicetti"), formerly Undersheriff at the time of the relevant events and currently Sheriff, and Kevin Payne ("Payne"), formerly Chief Jail Administrator at the time of the relevant events and now retired, deny the allegations of the Complaint  and

---

[2] Complaint Exh. A (Dkt. 1-1).
[3] Complaint Exh. B (Dkt. 1-2).
[4] Complaint Exh. C (Dkt. 1-3).

maintain that after a random audit of the Jail's supervisory records revealed numerous inconsistencies between Plaintiff's log entries, rounds Plaintiff conducted at the Jail, and time-swipes of Plaintiff's ID card, the criminal investigation was conducted resulting in Plaintiff's arrest on charges of five felony counts of tampering with public records in the first degree, for which Plaintiff eventually pleaded guilty to one count and voluntarily resigned from her employment.

Before the court are three motions Plaintiff filed to compel complete answers and responses to Plaintiff's interrogatories and document production requests including on August 12, 2022 (Dkt. 36) ("Plaintiff's First Motion"), October 7, 2022 (Dkt. 44) (Plaintiff's Second Motion"), and November 15, 2022 (Dkt. 50) ("Plaintiff's Third Motion").  Most of the discovery requests at issue pertain to Defendants' criminal investigation of Plaintiff for tampering with public records which Plaintiff maintains was undertaken to preclude consideration of Plaintiff for promotions.  Oral argument was deemed unnecessary.

Based on the following Plaintiff's First Motion is GRANTED in part, and DISMISSED as moot in part; Plaintiff's Second Motion is GRANTED; and Plaintiff's Third Motion is DENIED.


## DISCUSSION

**1.    Overview of Applicable Law**

Initially, the court provides a brief recitation of the law applicable to Plaintiff's three motions to compel discovery.  Fed. R. Civ. P. 26 ("Rule 26___") allows parties to obtain

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at

stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"Material is relevant for Rule 26(b)(1) discovery purposes if it bears on or is germane to any issue in the case or that may become an issue, but such material need not be admissible as evidence to be subject to discovery as provided in Rule 26(b)(1)." *Thuman v. Dembski*, 2022 WL 1197551, at *5 (W.D.N.Y. Apr. 22, 2022) (quoting *Anvik Corp. v. Samsung Elecs.*, 2009 WL 10695623, at *2 (S.D.N.Y. Sept. 16, 2009) ("'Relevance for purposes of discovery . . . is synonymous with germane and . . . it should not be read as meaning competent or admissible.'" (quoting *Koch v. Greenberg*, 2009 WL 2143634, at *2 (S.D.N.Y. July 14, 2009)))*.

"Once the requesting party demonstrates that material sought is relevant, the resisting party must demonstrate why the discovery is not permitted."  *Thuman*, 2022 WL 1197551, at *5 (citing *Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 237 (W.D.N.Y. 1998) (the party opposing discovery bears the burden of establishing the opposed discovery demands fail to comport with the standards set forth in Rule 26(b)).[5]  Motions to compel are "entrusted to the sound discretion of the district court," *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir.), *cert. denied*, 531 U.S. 1015 (2000), and "[a] trial court enjoys wide discretion in its handling of pre-trial discovery . . . ."  *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (citations and

---

[5] Pursuant to Fed. R. Civ. P. 37(a)(1) ("Rule 37(a)(1)"), as a prerequisite to a motion to compel, the requesting party is required to confer or attempt to confer with the requested party to avoid unnecessary motion practice.  In the instant case, the facts provided by Plaintiff, and undisputed by Defendants, establish the "meet and confer" requirements of Rule 37(a)(1) have been satisfied.

quotation marks omitted).   Rule 26(b)(1)(C) requires the court to limit discovery where

the discovery sought is, *inter alia*, unreasonably cumulative, duplicative, or "can be

obtained from another source that is more convenient, less burdensome, or less

expansive."  Fed. R. Civ. P. 26(b)(1)(C)(i).

"[G]eneral and conclusory objections as to relevance, overbreadth, or burden are

insufficient to avoid discovery of the requested information; rather, the objecting party

must show, specifically, how, despite broad and liberal construction afforded federal

discovery rules, each request is not relevant, or is overly broad, burdensome, or

oppressive."  *Guillory v. Skelly*, 2014 WL 4542468, at *8 (W.D.N.Y. Sept. 11, 2014)

(citing *US Bank National Association v. PHL Variable Insurance Co.,* 288 F.R.D. 282,

285 (S.D.N.Y.2012) (citing Fed.R.Civ.P. 26(b)(2)(C) and cases)).  Such showing may be

made by an affidavit made by a person with knowledge of the subject matter explaining

in reasonable detail the factual basis for the objection.  *Id*. (citing *Brown v. Department

of Correctional Services,* 2011 WL 2182775, at * 16 (W.D.N.Y. June 2, 2011) (citing

cases)).

Pursuant to Rule 26(c) document requests also may be denied where the

requested party demonstrates that compliance constitutes an "undue burden or

expense."  *Gross v. Lunduski*, 304 F.R.D. 136, 151 (W.D.N.Y. 2014).  "In opposing a

motion to compel document production sought pursuant to Rule 34(a)[6], 'the burden is

on the responding party to convince the court that a document request is

objectionable.'"  *Id*.  (quoting Baicker–McKee, Janssen, Corr, Federal Civil Rules

Handbook 2014 (Thomson Reuters Westlaw) at 901 (citing cases)).  In exercising its

---

[6] Fed. R. Civ. P. 34(a) __ ("Rule 34(a) __").

"extremely broad discretion in ruling on objections to document requests, [t]he court will balance the need for the documents and the burden of producing them, but will generally require production unless the administration of justice would be impeded." *Id.* at 901–02 (citing caselaw).  *See also Burns v. Imagine Films Entertainment, Inc.,* 164 F.R.D. 589, 592–93 (W.D.N.Y.1996) (holding generalized objection that a discovery request is burdensome without resort to specific reasons in insufficient to justify refusal to respond).  "Additionally, it is well-established that in responding to a Rule 34(a) request, the party may make the relevant files available for the requesting party's inspection, instead of reviewing the files itself and producing copies of relevant documents."  *Gross*, 304 F.R.D. at 151-52 (citing *Pass & Seymour, Inc. v. Hubbell Inc.,* 255 F.R.D. 331, 335 (N.D.N.Y.2008) (permitting requesting party to review files complies with Rule 34)).

2.    **Plaintiff's First Motion**

Plaintiffs' First Motion pertains to Plaintiff's initial discovery demands served on May 19, 2021 ("First Discovery Requests"), including four sets of interrogatories separately served on each of the four named Defendants ("First Set of Interrogatories"), First Richmond Affidavit ¶ 3; *see* Plaintiff's First Motion Exhs. A – D (First Set of Interrogatories served, respectively, on Defendants County, Sheriff, Filicetti, and Payne), and E (first request for production of documents served on all Defendants) ("First Documents Requests").  After several agreements to extend the time to respond, Defendants' responses to the First Discovery Requests were served on October 22, 2021.  First Richmond Affidavit ¶ 35; see Plaintiff's First Motion Exhs. G - J (First Interrogatory Responses by, respectively, Defendants County, Sheriff, Filicetti, and

Payne), and Exh. K (First Documents Production by all Defendants).  Plaintiff had objections to several of Defendants' responses to the First Discovery Requests, and the parties' attempts to informally resolve their disputes were memorialized in several letters and e-mails exchanged between counsel, and necessitated twice amending the original January 12, 2021 Scheduling Order (Dkt. 21), including on October 28, 2021 (Dkt. 32), and March 31, 2022 (Dkt. 35).

The parties remained unable to resolve their disputes regarding the First Discovery Requests, and on August 12, 2022, Plaintiff filed Plaintiff's First Motion supported by the attached Attorney's Affirmation [of Anna Marie Richmond, Esq.][7] in Support of Plaintiff's Motion to Compel (Dkt. 36-1) ("First Richmond Affidavit"), Exhibits A through W (Dkts. 36-2 through 36-24) ("Plaintiff's First Motion Exh(s). __"), and Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Compel (Dkt. 36-25) (Plaintiff's First Memorandum").  Plaintiff's First Motion pertains to discovery demands, including interrogatories and document requests, served on Defendants on May 19, 2021.  On September 1, 2022, Defendants filed the Declaration [of Riane F. Lafferty, Esq.] in Opposition to Plaintiff's Motion to Compel (Dkt. 42) ("First Lafferty Declaration"), attaching in one volume Exhibits A through H (Dkt. 42-1) ("Defendants' First Motion Exh(s). ___"), and the Memorandum of Law in Opposition to Plaintiff's Motion to Compel (Dkt. 42-2) ("Defendants' First Response").  On September 12, 2022, Plaintiff filed Plaintiff's Reply to Response to Plaintiff's Motion to Compel (Dkt. 43) ("Plaintiff's First Reply").

---

[7] Unless otherwise indicated, all bracketed material has been added.

## A.  Timeliness of Motion

Preliminarily, the court addresses Defendants' argument, Defendants' First Response at 4, that Plaintiff's First Motion is untimely because the Second Amended Scheduling Order (Dkt. 35) in effect when Plaintiff's First Motion was filed on August 12, 2022, set July 29, 2022 as the deadline for moving to compel discovery, and Plaintiff fails to provide any explanation, let alone good reason, for failing to comply with such deadline.  In opposition, Plaintiff acknowledges Plaintiff's First Motion was technically filed late, but maintains that because the deadline for such motions was extended with the entry on August 29, 2022 of the Third Amended Scheduling Order (Dkt. 41), establishing September 27, 2022 as the deadline for motions to compel, the issue is now moot; otherwise, Plaintiff could simply refile Plaintiff's First Motion.  Plaintiff's First Reply.  Alternatively, Plaintiff requests the court grant the extension of the discovery deadline, retroactively, to July 31, 2022, to accommodate Defendants' failure to provide many discovery responses.  *Id*.

As Plaintiff points out, Plaintiff's First Reply at 3, after Plaintiff's First Motion was untimely filed, the filing of the Third Amended Scheduling Order on August 29, 2022, extended the deadline for filing motions to compel discovery from July 29, 2022 to September 27, 2022.  With the filing of the Third Amended Scheduling Order, the filing of Plaintiff's First Motion on August 12, 2022 became timely.  *Id*.  Defendants do not argue otherwise.  Accordingly, there is no merit to this argument with regard to Plaintiff's First Motion and the court does not further address it.

## B.      Privileges

Defendants provided Plaintiff with a privilege log[8] asserting the attorney-client

privilege with respect to three documents bearing Bates stamps DEF002562, 2565,[9]

and 2571, and the law enforcement investigatory privilege with respect to four

documents bearing Bates stamps DEF002549, 2550, 2578, and 2579.  On the privilege

log, the subject documents are described either as "investigation report" (Bates-

stamped pages DEF002549, 2550), or "email" (Bates-stamped pages DEF002562,

2565, 2571, 2577, 2578, and 2579).  Plaintiff challenges Defendants' assertion of the

attorney-client and law enforcement investigatory privileges and moves for a court order

compelling Defendants to produce redacted portions of the investigatory reports and the

e-mails which were exchanged between Lt. Brian Harrer ("Lt. Harrer") and certain of Lt.

Harrer's co-workers and supervisors in the Sheriff's Department.  Plaintiff's First

Memorandum at 2.

### 1.      Attorney-Client Privilege

Plaintiff challenges Defendants' assertion of the attorney-client privilege as to

Bates-stamped documents DEF002562, 2565, and 2571, arguing the documents are e-

mails between Lt. Harrer, Payne, one Michael P. Dunn ("Dunn"), and Filicetti, which

were copied to one Darren W. Engert ("Darren Engert"), and Daniel M. Engert ("Daniel

Engert"), none of whom are attorneys rendering the attorney-client privilege "*per se*

inapplicable."  *Id*. at 5-6.  In response, Defendants argue the redacted portions of the

subject e-mails contain legal advice that Lt. Harrer relayed from the County and Sheriff's

---

[8] A copy of the privilege log is filed as Plaintiff's First Motion Exh. S.
[9] In the interest of judicial economy and clarity, where multiple Bates-stamped documents are referenced, the court includes the full Bates-stamped number for the first document, but drops the prefix "DEF00" for the succeeding documents.

attorney to supervisory-level employees in connection with the internal investigation of Plaintiff's alleged misconduct, to which the attorney-client privilege applies.  Defendants' First Response at 5.  In further support of the First Motion to compel, Plaintiff maintains the attorney to whom Defendants refer is the District Attorney of Niagara County who represents the People of New York, and not Niagara County, the Niagara County Sheriff, the Niagara County Sheriff's Department, nor any of the named Defendants such that the attorney-client privilege is inapplicable.  Plaintiff's First Reply at 3. Defendants have not disputed Plaintiff's assertion,

A review of the documents for which Defendants assert the attorney-client privilege establishes all three are copies of the same e-mail dated May 16, 2019, from Lt. Harrer to Paye, Dunn, and Filicetti, and copied to Darren and Daniel Engert, with the same last line or paragraph redacted ("the e-mail").[10]  The e-mail recounts a discussion Lt. Harrer and one Captain Kolbe ("Capt. Kolbe"), had the previous day with the two Assistant Niagara County District Attorneys, "Bowman" and "Parisi," regarding Defendants' investigation into the asserted discrepancies between Plaintiff's log entries for rounds assertedly conducted at the Jail and the lack of corresponding swipe card or push button records, the Jail Management System records retention policy, the possibility that Plaintiff would be subjected to felony charges for falsifying business records, and that because only five felony counts could be served at the same time, Lt. Harrer and Capt. Kolbe planned to review video evidence corresponding to the false log entries so as to select the five most egregious instances to criminally charge Plaintiff.

---

[10] The redacted copies are filed as Defendants' First Motion Exh. F.  The court notes that for the first of the three documents, the redacted portion appears not on DEF002562, but on DEF0022563, which is not separately listed on the privilege log, but which may explain why the parties refer to eight, rather than seven, documents being at issue based on asserted privileges.

"It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or ipse dixit assertions." *In re Grand Jury Subpoena Dated January 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984) (citations and quotation omitted).  "The attorney-client privilege protects from disclosure '(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice.'" *Greater New York Taxi Association v. City of New York*, 2017 WL 4012051, at *10 (S.D.N.Y. Sept. 11, 2017) (quoting *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)).  Advice rendered to the client will not lose its attorney-client protection if legal advice received from counsel is distributed to others within a corporate entity.  *See Voelker v. Deutsche Bank AG*, 2014 WL 4473351, at *1 (S.D.N.Y. Sept. 11, 2014) (privilege may extend to communications among non-attorneys if the communications were made at the direction of counsel to provide information for the provision of legal advice).  Furthermore, "in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on a par with the claim of an individual or a corporate entity." *In re County of Erie*, 473 F.3d at 419.

Nevertheless, "[i]n civil suits between private litigants and government agencies, the attorney-client privilege protects most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance." *In re County of Erie*, 473 F.3d at 418.  This is consistent

with the Supreme Court's instruction that "[t]he lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Trammel v. United States*, 445 U.S. 40, 51 (1980).  It is basic, however, that a district attorney's duties include "'plenary prosecutorial power in the counties in which they are elected.'" *People v. Viviani*, 169 N.E.3d 224, 230 (N.Y. 2021) (quoting *People v. Romero*, 698 N.E.2d 424 (N.Y. 1988).  *See* N.Y. County Law § 700[1] (McKinney 2019) ("it shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he or she shall have been elected or appointed . . . .").  It is axiomatic that in carrying out this duty, a county district attorney represents the people of the State of New York, not the county.  *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) ("'When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State, not the county.'" (quoting *Baez v. Hennessey*, 853 F.2d 73, 77 (2d Cir. 1988), *cert denied*, 488 U.S. 1014 (1989))).  Because Defendants include the County of Niagara and county employees, they were not represented by, nor clients of, the District Attorney and, as such, the communications between the Niagara County District Attorney's office and Defendants are not protected by the attorney-client privilege.  *See In re County of Erie*, 473 F.3d at 419.

Moreover, even assuming an attorney-client privilege could attach to the documents at issue insofar as they are e-mails between Lt. Harrer, Payne, Dunn, and Filicetti for the purpose of sharing legal advice from the Niagara County District Attorney in connection with the internal investigation of Plaintiff, the attorney-client privilege was

destroyed by disclosing the communications to Darren and Daniel Engert.  *See Robbins & Meyers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 94-95 (W.D.N.Y. 2011) (voluntary disclosure of information otherwise subject to attorney-client privilege destroys the privilege).  Nor is there any indication that further communications were directed by counsel.  *See Voelker*, 2014 WL 4473351, at * 1.

Plaintiff's First Motion is thus GRANTED as to the attorney-client privilege and Bates-stamped documents DEF002562, 2563, 2565, and 2571.

### 2.    Law Enforcement Investigative Privilege

Plaintiff also moves for a court order compelling Defendants to produce the redacted pages identified in the privilege log which Defendants maintain are protected by the law enforcement investigative privilege, specifically, DEF002549, 2550, 2577, 2578, and 2579,[11] some of which are redacted in full while others are redacted only in part, arguing that because such privilege only applies to on-going investigations, and Defendants' investigation into Plaintiff's alleged misconduct is complete, the privilege cannot apply.  Plaintiffs' First Memorandum at 6.  In opposition, Defendants argue the purpose of the law enforcement investigative privilege is to prevent the public disclosure of investigatory files which could harm law enforcement efforts.  Defendants' First Response at 5-6.  In further support of Plaintiff's First Motion, Plaintiff argues that because Defendants' investigation into Plaintiff's alleged misconduct is complete, the law enforcement investigatory privilege no longer protects the subject documents from disclosure.  Plaintiff's First Reply at 3-4.

---

[11] Although Plaintiff maintains the privilege log lists Bates-stamped page DEF002571 as protected by the law enforcement investigatory privilege, Plaintiff's First Memorandum at 6, a plain review of the privilege log establishes Defendants assert page DEF002571 is shielded from disclosure exclusively by the attorney-client privilege.

"When assessing a claim of law enforcement privilege, a district court must first determine if the law enforcement privilege applies to the documents at issue." *In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010).  "[T]he party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the documents in question."  *Id*. (citing *In re Sealed Case*, 856 F.2d 268, 271-72 (D.C.Cir. 1988)).  "To meet this burden, the party asserting the law enforcement privilege must show that the documents contain information that the law enforcement privilege is intended to protect. Such protected information includes information pertaining to 'law enforcement techniques and procedures,' information that would undermine 'the confidentiality of sources,' information that would endanger 'witness and law enforcement personnel [or] the privacy of individuals involved in an investigation,' and information that would 'otherwise ... interfere[ ] with an investigation.'"  *Id*. (quoting *In re Dep't of Investigation of City of New York,* 856 F.2d 481, 484 (2d Cir. 1988)).  The law enforcement investigatory privilege will apply even without an active investigation if "'the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information' is revealed to the public."  *Id*. (quoting *Nat'l Congress for P.R. Rights ex rel. Perez v. City of N.Y.,* 194 F.R.D. 88, 95 (S.D.N.Y.2000)).  In the instant case, the documents withheld pursuant to the law enforcement investigatory privilege must be produced because Defendants have failed to make the required showing that the privilege applies.

In particular, the Defendants have absolutely failed to provide any argument showing the redacted information on the documents contains any information the law enforcement investigatory privilege is intended to protect.  As such, the court is not able

to find the redactions are intended to protect any law enforcement techniques or procedures, or that disclosure would undermine the confidentiality of sources, endanger witnesses, or interfere with any investigation.  *See In re The City of New York*, 607 F.3d at 944.  Significantly, it is not obvious that the nature of the criminal investigation into Plaintiff's assertedly unlawful conduct on the job, *i.e.*, comparisons between the timing of Plaintiff's ID card time swipes, Plaintiff's log entries regarding rounds, and video surveillance of the Jail, would require disclosure of any law enforcement techniques or procedures, confidential sources, or witnesses, nor have Defendants made any attempt to establish otherwise such as providing an affidavit from anyone involved in the investigation explaining the inherent danger in disclosing the redacted material.

Defendants have thus failed to meet their burden to establish the redacted information is shielded from disclosure by the law enforcement investigatory privilege and, accordingly, such documents must be disclosed to Plaintiff.  Plaintiff's First Motion is GRANTED as to the documents Defendants withheld based on the law enforcement investigatory privilege.

### 3.    Belatedly Asserted Privileges

Although not set forth on the privilege log, in opposing Plaintiff's First Motion, Defendants assert the documents that are protected from disclosure by the law enforcement investigatory privilege are also shielded by the government deliberative process privilege and as attorney work product.  Defendants' First Response at 6. Plaintiff offers no argument in opposition to these two newly asserted privileges in replying in further support of the First Motion.

Where a privilege log fails to assert a particular privilege as to a withheld or redacted document, the unasserted privilege is waived.  *See United States v. Construction Products Research, Inc.*, 73 F.3d 464, at 473 (2d Cir. 1996) (responding party's failure to assert on privilege log that documents were protected from disclosure by work product doctrine, asserting only attorney-client privilege, waived work product doctrine) (citing cases).  Accordingly, Defendants, by failing to assert either the deliberative process privilege or work product doctrine, have waived such privileges with regard to the redacted documents.

### C.    Interrogatories Directed to Specific Parties

As stated above, Discussion, *supra*, at 7, on May 19, 2021, Plaintiff separately served written interrogatories ("First Set of Interrogatories") upon each of the four named Defendants to this action, and also jointly served on all Defendants document requests.  An instruction included in the First Set of Interrogatories served on each Defendant provides that "[i]f an interrogatory cannot be answered in full, then Defendant should answer to the extent possible, and state the reason for the inability to provide a complete answer."  Dkts. 36-2 at 2 (County); 36-3 at 2 (Sheriff); 36-4 at 2 (Filicetti); and 36-5 at 2 (Payne).  In responding to the First Set of Interrogatories, 13 of the responses from an individual Defendant reference responses from other Defendants.  For example, Defendant Sheriff's response to Interrogatory 6 of Plaintiff's First Set of Interrogatories asking Defendant Sheriff to "identify each person who participated in any way with the decision to charge Plaintiff with the misconduct that is set forth in Notice of Disciplinary Charges 19-001-AM," includes "[i]n addition to General and Continuing Objections, Defendant objects to this interrogatory as it is duplicative.  Please see

Defendant County of Niagara's Response to Interrogatory No. 13."  First Motion Exh. H

at 5-6; Dkt. 36-9 at 5-6.  Defendant County's response to Interrogatory 13 of Plaintiff's

First Set of Interrogatories asks Defendant County to "[i]dentify all individuals who

participated in any way with the decision to implement Plaintiff's discipline during the

period January 1, 2018 – December 31, 2020," to which Defendant County responded

"Co-Defendant Michael J. Filicetti, co-Defendant Kevin Payne, Captain Daniel Engert,

Director of Human Resources for Defendant Peter P. Lopes, and Manger of Labor

Relations for Defendant, Joseph A Provino, Sheriff James Vontour."  First Motion Exh.

G at 9; Dkt, 36-8 at 9.  Plaintiff argues that such cross-referenced responses violated

Fed. R. Civ. P. 33(b) ("Rule 33(b)") which requires each party to whom interrogatories

are directed must "answer each Interrogatory separately and fully," Plaintiff's

Memorandum at 6, and seeks a court order directing each Defendant who provided

interrogatory responses that cross-reference responses by another Defendant "to

confirm that a Response by one party cited in an interrogatory answer by another party

is binding upon the answering party," *id*. at 7 (citing First Motion Exhs. L, S), which, to

date, Defendants have failed to provide.  *Id*.  In opposition, Defendants argue their

responses to the First Set of Interrogatories are already individually verified, and

because many of the interrogatories served on one Defendant were duplicative of

interrogatories served on another Defendant, "for efficiency, Defendants simply referred

to the responses set forth in the other Defendants' interrogatories and then verified the

same."  Defendants' First Response at 7-8 (citing Defendants' First Motion Exh. H (Dkt.

42-1 at 83-87 (copies of each Defendant's sworn verification accompanying each

Defendant's responses to Plaintiff's First Set of Interrogatories)).  In further support of

18

Plaintiff's First Motion on this point, Plaintiff argues Defendants' "verifications do not respond to Plaintiff's objections, as they merely attest to the truth of the responses, rather than providing the confirmation Plaintiffs [*sic*] seek[s]."  Plaintiff's First Reply at 4.

Pursuant to Rule 33(b), when answering an interrogatory, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  Within the Second Circuit, courts have interpreted Rule 33(b) as not permitting the type of "cross-referencing" to which Plaintiff objects with regard to Defendants' answers to the First Set of Interrogatories.  In particular, "[a]n answer to an interrogatory must be completed within itself and, it should be in a form that may be used at trial."  *Trueman v. New York State Canal Corp*., 2010 WL 681341, *2 (N.D.N.Y. 2010) (citing *Int'l Mining Co., Inc. v. Allen & Co., Inc*., 567 F.Supp. 777, 787 (S.D.N.Y. 1983)).  Significantly, "[a]nswers to interrogatories that incorporate other documents by reference are strongly disfavored.  Reference to depositions, other answers to the interrogatories, other document production, the complaint itself, or any other documents are improper and thus unresponsive." *Trueman*, 2010 WL 681341, at *3 (citing *Poulio v. Paul Arpin Van Lines, Inc.,* 2004 WL 1368869, at *2 (D.Conn. June 14, 2004) (noting that other courts have held that a party may not incorporate deposition testimony or rely upon future depositions in lieu of complete responses to interrogatories); *In re Savitt/Adler Litig.,* 176 F.R.D. 44, 49-50 (N.D.N.Y.1997) (finding the plaintiffs improperly referenced other responses in lieu of providing complete interrogatory responses); and Moore Federal Practice §§ 33.101, 33.103, & 33.106).  Because interrogatory responses may be used at trial and, thus, are akin to testimony, they must be specifically answered by the party to whom they are

directed and signed by such party under oath. *Id*. (citing Fed. R. Civ. P. 33(b)(1)(A) & (5) and cases)).  Accordingly, Defendants' responses to Plaintiff's First Set of Interrogatories that cross-reference other responses are improper.

Although the court could order Defendants to provide individual responses for each of the responses to the First Set of Interrogatories containing a cross-reference to another Defendant's responses, Plaintiff seeks only a confirmation that each Defendant confirm their intention to be bound by each cross-referenced response.  This requested relief would permit a Defendant who cross-referenced another Defendant's answer to have his response used at trial like testimony.  Plaintiff's First Motion is thus GRANTED as to this request.

### D.    Electronic Supervisory Round Review Records

Plaintiff's First Discovery Requests served on May 19, 2021, included Plaintiff's First Demand for Documents ("First Demand for Documents") served on all Defendants. *See* Discussion, *supra*, at 7.  Plaintiff argued Defendant initial production of documents in response to the First Demand for Documents, including 2719 pages of documents organized into five folders, did not fully comport with Fed. R. Civ. P. 34(b)(2)(E)(i)'s requirement that documents be organized and labeled so as to correspond to the categories in the request for documents.  Plaintiff's First Memorandum at 8-10.  In response, Defendants maintain they have since specified which pages of their documents respond to which of Plaintiff's requests, Defendants' First Response at 8-10, which Plaintiff acknowledges as sufficient.  Plaintiff's First Reply at 5.

Accordingly, Plaintiff's First Motion is DISMISSED as moot with regard to this argument.

### E.     Confirmation of Interrogatories Answered

Plaintiff requested Defendants identify specific "Electronic Supervisory Round Review" records from among 411 pages of records Defendants produced that reference the alleged documentation errors that allegedly occurred in connection with the rounds Plaintiff conducted while employed at the Jail.  Plaintiff's First Memorandum at 2. According to Plaintiff, although Defendants maintain the criminal investigation into Plaintiff's documentation "was triggered after review of a randomly selected work shift of Plaintiff's identified significant problems in her recording of rounds," none of the more than 400 pages[12] of rounds reviews provided by Defendants included documentation of the alleged problem and Defendants have refused to identify on which page the record can be found.  *Id.* at 10.  In opposition, Defendants maintain Plaintiff has been provided the investigative report and supporting evidence concerning Defendants County and Sheriff's investigation into Plaintiff's misconduct, Defendants' First Response at 10 (referencing DEF002677-2691 (internal investigative report), DEF002076-2440 (Plaintiff's ID card time swipes and activity logs showing the alleged discrepancies leading to the criminal charges), DEF002463-2490 and DEF002492-2495 (transcripts of investigation interviews with Plaintiff), and DEF002692-2699 (video evidence)), as well as the criminal investigation report which is based on the same evidence, *id.* (referencing DEF002544-2551 (criminal investigation report), and DEF002497-2501 (felony complaints against Plaintiff)).  In reply, Plaintiff argues that at his deposition, one Lt. Joseph Moll ("Lt. Moll"), testified he was the person who identified the problem, but was unable to locate a copy of the record of his review on which the subsequent

---

[12] Plaintiff first specifies "411 pages of such records" were produced, Plaintiff's First Memorandum at 2 and 5, but later refers to "417 pages of rounds reviews . . . ."  Plaintiff's First Reply at 5.

criminal investigation was premised.  *Id*.  Plaintiff argue that she is entitled to know whether or not the record exists, and that if it does exist, then she is entitled to a copy of it as requested.  *Id*.

The crux of Plaintiff's employment discrimination claim for retaliation challenges is that Defendants falsely maintain that their criminal investigation of Plaintiff was triggered by a review of a randomly selected work shift of Plaintiff that showed significant problems with Plaintiff's recording of her rounds when, in reality, the review was based on Defendants' desire that Plaintiff, based on her sex, not be considered for an upcoming promotion despite Plaintiff's scoring among the top three on the relevant civil service examination, and that a pending criminal investigation of Plaintiff would preclude Defendants from having to consider Plaintiff for the position.  Accordingly, the record of Lt. Moll's review on which the criminal investigation against Plaintiff is based is relevant to Plaintiff's action.  Insofar as Plaintiff is unable to identify such report among the 411 pages of documents Defendants produced in response to Plaintiff's demand, Defendants are ORDERED to either produce Lt. Moll's record referenced in his deposition or, if the document cannot be found, provide an affidavit made by someone with the required knowledge to explain the steps taken to locate the document.

Plaintiff's First Motion is GRANTED as to the request for the record of Lt. Moll's review of the randomly selected work shift of Plaintiff's recording of rounds leading to the criminal investigation against Plaintiff.

**F.    Defendant Payne's Interrogatory Responses and "Bi-Weekly" Definition**

With regard to the First Set of Interrogatories Plaintiff served on Defendant Payne, Plaintiff raised several challenges to Payne's responses mostly pertaining to the

manner in which Payne's responses were denominated, but also seeking to have Payne define the word "bi-weekly" as used in Payne's response to Interrogatory No. 5. Plaintiff's First Memorandum at 10-11.  In opposition, Defendants explain that a "typo" in Payne's interrogatory responses whereby responses were misnumbered caused Plaintiff's confusion, and Plaintiff's other questions regarding Payne's responses were answered during Plaintiff's deposition of Payne.  Defendants' First Response at 10-14. Defendants also maintain they have defined the term "bi-weekly" to mean "twice per week."  *Id*. at 14.  In reply, Plaintiff withdraws her objections raised to Payne's interrogatory responses, but reserves her right to address further interrogatories to Payne if Defendant Filicetti's interrogatory responses or deposition testimony raises questions as to Payne's involvement in the events at issue in this action.  Plaintiff's First Reply at 6-7.

Based on the representations of the parties, Plaintiff's First Motion is DISMISSED as moot with regard to this argument.

### G.     Interrogatories and Documents Relative and Proportional to Case

Insofar as Defendants objected to 21 of Plaintiff's First Discovery Requests, including interrogatories and document demands, as unduly burdensome or overbroad, Plaintiff maintains that Plaintiff's counsel's letter dated January 28, 2022 ("January 28, 2022 Letter"),[13] "narrowed" the focus of some of these requests, and dispute Defendants' contentions with regard to the other requests, yet Defendants still have not provided responses.  Plaintiff's First Memorandum at 11-19.  In opposition, Defendants argue the requests remain overly broad, unduly burdensome, and neither relevant nor

---

[13] Filed as Plaintiff's First Motion Exh. L (Dkt. 36-13).

proportional to the needs of this action.  Defendants' First Response at 14-23.  Plaintiff argues in further support that Defendant Sheriff has yet to fully respond to Interrogatory No. 4, Plaintiff's Reply at 5, and Filicetti has yet to fully respond to Interrogatories Nos. 4, 5, 6, 7, 8, and 16, *id*. at 5-6, but that Plaintiff obtained from Defendant Payne's deposition the information sought by Interrogatories Nos. 3, 4, 5, 6, 8, 9, 11, 12, 13, and 16, and withdraws this motion as to such interrogatories.  *Id*. at 7-10.

It is basic that a party may request discovery regarding unprivileged matter relevant to the party's claim or defense provided the material sought is proportional to the needs of the case.  Fed.R.Civ.P. 26(b)(1).  Relevancy, for purposes of Rule 26(b)(1), is broadly construed and "[w]hen objecting to a request for discovery, it is the objecting party's burden to show 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'"  *Olin v. Rochester City Sch. Dist.*, 2019 WL 4643594, at *3 (W.D.N.Y. Sept. 24, 2019) (quoting *Ruran v. Beth El Temple of W. Hartford, Inc.*, 226 F.R.D. 165, 167 (D. Conn. 2005))).  The court considers whether the Discovery Requests at issue here are unduly burdensome, overbroad, irrelevant, or not proportional to the action.

### 1.    Sheriff's Response to Interrogatory No. 4

Plaintiff's Interrogatory No. 4[14] posed to Defendant Sheriff requests Defendant Sheriff to

---

[14] A copy of Plaintiff's First Set of Interrogatories served on Defendant Sheriff is filed as Plaintiff's First Motion Exh. B (Dkt. 36-3); a copy of Defendant Sheriff's responses to the interrogatories is filed as Plaintiff's First Motion Exh. H (Dkt. 36-9).

identify all the person(s) who provided information that was considered by the person(s) identified in response to Interrogatory No. 3 concerning every promotion to sergeant in the Jail Administration Division of the Sheriff's Office between January 1, 2011 and the present.

Dkt. 36-3 at 4.

Defendant Sheriff objected that this interrogatory is "overly broad and unduly burdensome," asserting "the undefined term 'information,' . . . is extremely broad and susceptible to many different meanings and interpretations so as to make it difficult to respond accurately," and further objected to the request as "overly burdensome to the extent it seeks identification of 'all' persons who provided 'any' information considered regarding 'every' promotion to sergeant."  Dkt. 36-6 at 5.  In the January 28, 2022 Letter, Plaintiff advised Defendants that Plaintiff was limiting the request "to the time frame between 2015-present," and that Plaintiff was seeking the identification of "those people and all others who provided information that was considered in any decisions on promotion to the position of sergeant at the Niagara County Jail during the specified time period."  Dkt. 36-13 at 4.

In support of Plaintiff's First Motion, Plaintiff argues the requested information is relevant to her first EEOC Charge complaining Defendants denied Plaintiff the opportunity for a promotion based on Plaintiff's sex, and proportional to the needs of the case.  Plaintiff's First Memorandum at 12.  In opposition, Defendants assert it is "virtually" impossible to identify every person who provided any information regarding promotion decisions to the sergeant position over the past 12 years, and that Plaintiff already knows both who was promoted and who is responsible for such decisions such that the requested information can be obtained through depositions.  Defendants' First Response at 15.  In further support the motion, Plaintiff maintains because only six

people were promoted to sergeant since 2011, the request is not unduly burdensome. Plaintiff's First Reply at 5.

As discussed above, Discussion, *supra*, at 2, at the heart of Plaintiff's employment discrimination action is Defendants' alleged disparate treatment of female employees which Plaintiff maintains is evidenced by, *inter alia*, Defendants' failure to promote any female to the position of sergeant at the Niagara County Jail. The information sought by this interrogatory will reveal if the sex of any candidate for the sergeant position was considered a disqualifying factor in making promotions. Further, Plaintiff's subsequent limitation of the interrogatory to the time period 2015 to the present limits the requested response to only six promotions, as Plaintiff asserts and Defendants do not dispute, thereby rendering Defendants' overly broad and unduly burdensome objections without merit. Moreover, insofar as Defendants maintain Plaintiff can obtain information responsive to this interrogatory through depositions, courts within the Second Circuit have held that a partly may not rely on the prospect that the requested information may be obtained through "future deposition testimony in lieu of complete responses to interrogatories." *See Trueman*, 2010 WL 681341, at * 3 (citing *Poulio v. Paul Arpin Van Lines, Inc.*, 2004 WL 1368869, at * 2 (D.Conn. June 14, 2004) (citing cases)). Accordingly, Defendants cannot rely on the possibility that Plaintiff may be able to obtain some of the requested information through future depositions.

Plaintiff's First Motion is GRANTED as to this request.

### 2.    Filicetti's Response to Interrogatory No. 4

Plaintiff's Interrogatory No. 4[15] to Defendant Filicetti requests Filicetti

identify the person(s) involved in the decision to discipline Plaintiff for alleged time violations involving inconsistencies between her log entries and swipes recorded in Defendants' electronic access control system and describe in precise detail exactly what each person identified did, and when he or she did it, in connection with the decision.

Dkt. 36-4 at 4.

Defendants objected to this interrogatory as "overly broad, unduly burdensome, and duplicative," and directed Plaintiff to Defendant County's response to Interrogatory No. 13. Dkt. 36-10 at 5. In the January 28, 2022 Letter, Plaintiff disputes the interrogatory is overly broad or unduly burdensome, asserting the request is limited to a two year period during which Defendants disciplined Plaintiff, and asserts the interrogatory seeks information relevant to the facts at issue in this case, adding that Plaintiff would be satisfied with Filicetti's confirmation that Filicetti agreed to be bound by Defendant County's response to Interrogatory No. 13 which sought essentially the same information. Dkt. 36-13 at 7.

In support of Plaintiff's First Motion, Plaintiff argues that because the interrogatory is limited in time and seeks information central to the facts at issue, Defendants' objections are without merit. Plaintiff's First Memorandum at 12. In opposition, Defendants maintain Filicetti "cannot reasonably be expected to recall" the identity of all persons involved in the decision to issue disciplinary charges against Plaintiff, as well as what each person did and when such that the request is overly broad, unduly burdensome, and not proportional to Plaintiff's needs with regard to this

---

[15] A copy of Plaintiff's First Set of Interrogatories served on Defendant Filicetti is filed as Plaintiff's First Motion Exh. C (Dkt. 36-4); a copy of Defendant Filicetti's responses to the interrogatories is filed as Plaintiff's First Motion Exh. I (Dkt. 36-10).

action, and that Plaintiff can obtain the requested information at Filicetti's deposition which was then scheduled for October 7, 2022.  Defendants' First Response at 15.  In further support of the motion, Plaintiff argues Filicetti should be directed to answer the interrogatory to the best of his ability and, if necessary, include a disclaimer as to the scope and breadth of his recollection.  Plaintiff's First Reply at 6.

With regard to Filicetti's assertion that Plaintiff can obtain the requested information at Filicetti's deposition, as discussed, Discussion, *supra*, at 19, a requested party's obligation to provide complete responses to interrogatories is not fulfilled by asserting the information may be obtained through "future deposition testimony . . . ." *Trueman*, 2010 WL 681341, at * 3.  Further, by including in his response to the interrogatory a reference to the County's response to Interrogatory No. 13 served on the County, Filicetti impliedly admits to knowing the identities of the persons responsible for the decision to subject Plaintiff to discipline.  Significantly, in the January 28, 2022 Letter, Plaintiff agreed to forgo the rest of the information sought by the interrogatory if Filicetti confirmed he was bound by the County's answer to its Interrogatory No. 13 which the court observes provides the names of five individuals, including Filicetti, Payne, Captain Daniel Engert, the County's Director of Human Resources Peter P. Lopes, Manager for Labor Relations Joseph A. Provino, and Sheriff James Vontour. Dkt. 13-8 at 9.  The court thus construes Plaintiff as having further "narrowed" the information sought from Filicetti by this interrogatory and directs Filicetti to inform Plaintiff whether he agrees these five individuals were the individuals involved in the disciplinary decisions regarding Plaintiff for the relevant period of time.

Plaintiff's First Motion is thus GRANTED in part and DISMISSED as moot in part as to Filicetti's Response to Interrogatory No. 4.

### 3.      Filicetti's Responses to Interrogatories Nos. 5, 6 and 7

Plaintiff's Interrogatories Nos. 5, 6 and 7 to Defendant Filicetti ask Filicetti to identify all non-privileged communications Filicetti had with any individuals regarding Plaintiff's First, Second and Third EEOC Charges (Filicetti Interrogatory No. 5), the Commissioner of Corrections' 2018 evaluation that found inadequate the Jail's monitoring of correction officer's documentation of rounds (Filicetti Interrogatory No. 6), and the implementation by Defendants and their representatives of the ESRR procedure in the Jail (Filicetti Interrogatory No. 7).   Dkt. 36-4 at 4.   Defendant Filicetti's response to each of these three interrogatories is essentially the same with Filicetti asserting each interrogatory is overly broad and unduly burdensome and requests information that is neither relevant nor proportional to the issues in this action.  Dkt. 36-10 at 5-6.  Plaintiff's January 28, 2022 Letter did not "narrow" these interrogatories, and Plaintiff argues in support of Plaintiff's First Motion that the requested information is relevant to the disciplinary action Defendants pursued against Plaintiff which resulted in Plaintiff's discharge from employment in retaliation for Plaintiff's filing the three EEOC Charges complaining about Defendants' failure to promote and disparate treatment, Plaintiff's First Memorandum at 13 (regarding Interrogatory No. 5), Defendant's motivation, intent and discriminatory animus, *id*. (regarding Interrogatory No. 6), and whether Defendants' asserted reliance on the ESRR procedure was mere pretext for gender-based discriminatory treatment of Plaintiff.  *Id*. (regarding Interrogatory No. 7). In opposition, Defendants argue as to each of these three interrogatories that Filicetti

cannot reasonably be asked to recall all such communications and that Plaintiff can ask

Filicetti about the communications at Filicetti's deposition then scheduled for October 7,

2022.  Defendants' First Response at 16-17.  In reply, Plaintiff points to the

interrogatories' instructions providing that if an interrogatory cannot be answered in full,

the relevant Defendant should answer to the extent possible and explain why he cannot

provide a complete answer.  Plaintiff's First Reply at 6.

With regard to Filicetti's assertion that Plaintiff can obtain the requested

information at Filicetti's deposition, as discussed, Discussion, *supra*, at 19, a requested

party's obligation to provide complete responses to interrogatories is not fulfilled by

asserting the information may be obtained through "future deposition testimony . . . ."

*Trueman*, 2010 WL 681341, at * 3.  Further, each of these three interrogatories are

relevant to the issues in this action as Plaintiff asserts.  Moreover, despite Plaintiff's

interrogatory instructions allowing Filicetti to explain any inability to recollect the

information necessary to fully respond to these interrogatories, Filicetti has not done so

which begs the question of whether Filicetti cannot recall, or chooses not to recall.

Plaintiff's First Motion is GRANTED as to these interrogatories.

### 4.    Filicetti's Response to Interrogatory No. 8

Plaintiff's Interrogatory No. 8 requests Filicetti

describe all actions undertaken by Defendants between April 9, 2019 and July 1,
2019, inclusive, that communicated to Plaintiff details and specific information
concerning her alleged violation of the Employer's procedures, rules and
regulations, and information as to how she might avoid violations of those rules
and regulations in the future.

Dkt. 36-4 at 4-5.

In response, Defendant Filicetti asserts the interrogatory is overly broad and burdensome, and irrelevant and not proportional to the needs of this action.  Dkt. 36-10 at 7.  This interrogatory was not "narrowed" by Plaintiff's January 28, 2022 Letter, and Plaintiff argues the ESRR written procedures require initial counseling for the officer found to be noncompliant with rounding requirements, but Plaintiff asserts she was not provided with any specific information regarding her alleged violations of the rounding requirements until July 8, 2019, when Plaintiff received the Notice of Discipline. Plaintiff's First Memorandum at 14.  Plaintiff thus maintains that Defendants' alleged failure to comply with the ESRR counseling requirements is relevant to Plaintiff's proof of her claims in this action as such failure is likely to bear upon whether Defendants had predetermined Plaintiff's violations thus supporting Plaintiff's theory that Defendants acted with discriminatory intent.  *Id*.  In opposition, Defendants argue not only that the requested information is overly broad, unduly burdensome, and not proportional to the needs of this case, but that Plaintiff already knows the actions Defendants took to communicate to Plaintiff her alleged violations of the County's rounding procedures, and that documents Defendants already produced in this action establish Plaintiff was first informed on April 9, 2019, she was under investigation for violating the ESRR rounding and rounding documentation policies and procedures, and was advised on June 11, 2019, of the specific violations of the rounding and rounding documentation policies and procedures.  Defendants' First Response at 17-18.  In reply, Plaintiff references the interrogatories' instructions providing that if an interrogatory cannot be answered in full, the requested Defendant should answer to the extent possible and explain why he cannot provide a complete answer.  Plaintiff's First Reply at 6.

As discussed above, Discussion, *supra*, at 19, a requested party's obligation to provide complete responses to interrogatories is not fulfilled by asserting the information may be obtained through "future deposition testimony . . . ." *Trueman*, 2010 WL 681341, at * 3.  Further, as Plaintiff argues, Interrogatory No. 8 is relevant to whether, in addition to the notifications on April 9 and June 11, 2019, Defendants took any other actions to inform Plaintiff of the alleged violations of the rounding policies and procedures at issue in this action.  Moreover, despite including interrogatory instructions permitting Filicetti to explain any inability to recollect the information necessary to fully respond to the interrogatories, Filicetti has not done so which begs the question of whether Filicetti cannot recall, or chooses not to recall.

Plaintiff's First Motion is GRANTED as to Interrogatory No. 8.

### 5.   Filicetti's Response to Interrogatory No. 16

Plaintiff's Interrogatory No. 16 requests that Filicetti, with regard to the felony complaints against Plaintiff, state

    a)  Who authorized the preparation of the felony complaints;
    b)  On what date were the felony complaints prepared;
    c)  What communication did Defendant Filicetti have with Lt. Harrer concerning the felony complaints.

Dkt. 36-4 at 5-6.

Defendant Filicetti included the names of the two Niagara County Assistant District Attorneys who prepared the felony complaints, states that Filicetti does not recall the dates of the felony complaints, and otherwise objects that the interrogatory is overly broad and unduly burdensome, and seeks information that is neither relevant nor proportional to the issues in this action.  Dkt. 36-10 at 10.  Plaintiff, in the January 28, 2022 Letter, addresses only subparagraph c of the interrogatory asserting the request

for the communications is not overly broad or unduly burdensome and the communications are both relevant and proportional to this action, and argues in support of Plaintiff's First Motion that the requested communications are relevant to her claim that Defendants pursued disciplinary actions against Plaintiff that ultimately resulted in Plaintiff's discharge in retaliation for Plaintiff's filing the EEOC Charges regarding Defendants' alleged failure to promote, and disparate discipline.  Plaintiff's First Memorandum at 14.  In opposition, Defendants argue it is unreasonable to expect Filicetti to recall the requested communications with Lt. Harrer regarding the felony complaints, and that communications regarding the criminal investigation of Plaintiff have already been provided through documents Bates-stamped DEF002552-2579, and that Plaintiff can question Filicetti about such communications at Filicetti's deposition then scheduled for October 7, 2022.  Defendants' First Response at 18.  In reply, Plaintiff maintains Filicetti should be directed to either provide a complete answer to the interrogatory or provide a statement as contemplated by the interrogatories' instructions explaining why Filicetti cannot provide a more complete answer.  Plaintiff's Reply at 6.

As discussed above, Discussion, *supra*, at 19, a requested party's obligation to provide complete responses to interrogatories is not fulfilled by asserting the information may be obtained through "future deposition testimony . . . ."    *Trueman*, 2010 WL 681341, at * 3.  Further, as Plaintiff argues, Interrogatory No. 16 is relevant to Defendants' motivation to pursue the criminal action against Plaintiff, including whether the motivation was discriminatory in nature.  Moreover, despite including interrogatory instructions permitting Filicetti to explain any inability to recollect the information

necessary to fully respond to the interrogatories, Filicetti has not done so which again begs the question of whether Filicetti cannot recall, or chooses not to recall.

Plaintiff's First Motion is GRANTED as to Interrogatory No. 16.

### 6.     Defendants' Response to Document Request No. 14

Plaintiff's Document Request No. 14[16] seeks "copies of all Documents concerning or summarizing any oral agreement between Plaintiff and Defendant(s) during the course of Plaintiff's employment with Defendant(s)."  Dkt. 36-6 at 6. Defendants objected that the information requested is overly broad and unduly burdensome, and not relevant nor proportional to the issues in this action because Plaintiff's ten years of employment "spans far beyond" the period of time relevant to this case, and the request for copies of any and all documents memorializing any agreements does not limit the request to the matters at issue.  Dkt. 26-12 at 11.  In the January 28, 2022 Letter, Plaintiff restricted the relevant time period to oral agreements between Plaintiff and Defendants offered or entered into during the period January 1, 2019 and February 28, 2020, but advised that such documents were not limited to e-mails and texts.  Dkt. 36-13 at 14.  Plaintiff argues in support of Plaintiff's First Motion that the requested documents, as limited by the January 28, 2022 Letter, are relevant both to Plaintiff's claims and Defendants' possible defenses, adding if no such agreements were reached, Defendants should state so.  In response, Defendants repeat their objections and assert that "[s]uch documents, if they exist, would already be in Plaintiff's possession."  Defendants' First Response at 21.  In reply, Plaintiff states

---

[16] A copy of Plaintiff's First Documents Requests served on Defendants is filed as Plaintiff's First Motion Ehx. E (Dkt. 36-6); a copy of Defendants' responses is filed as Plaintiff's First Motion Exh. K (Dkt. 36-12).

that she will withdraw this request "[i]f Defendants are willing to stipulate that Plaintiff's notes concerning such agreements are binding upon them. . . ."  Plaintiffs' Reply at 7.

The documents requested by Document Request No. 14 are relevant to Plaintiff's claim of disparate treatment.  That a requesting party is in possession of copies of requested documents is not a ground for a refusal to produce.  *See Henderson v. Wells Fargo Bank, N.A.*, 2017 WL 684439, at * 4 (D.Conn. Feb. 21, 2017) ("the Federal Rules [of Civil Procedure] do not afford a party the option of refusing to produce discovery on the basis that she believe the requesting party is already in possession of the requested discovery."_).  Accordingly, Defendants are required to either stipulate that such documents have already been produced, or provide an affidavit made by someone with knowledge attesting that the subject documents do not exist.

Plaintiff's First Motion is GRANTED as to Document Request No. 14.

### 7.    Defendants' Responses to Document Requests Nos. 35 and 36

Document Requests 35 and 36 seek, respectively, copies of written communications between Defendant Filicetti or Payne and any Sheriff's Department employee concerning Plaintiff sent or received between May 1, 2018 and September 30, 2019.  Dkt. 36-6 at 9.  Defendants' response to these requests were general assertions that the requests were overly broad, unduly burdensome, irrelevant or not proportional to the issues in this action.  Dkt. 36-12 at 19-20.  Plaintiff has not narrowed these requests, and argues that the requests are already narrowly focused as to the time span, issues, and persons involved.  Plaintiff's First Memorandum at 17.  In opposition, Defendants repeat their objections especially insofar as Plaintiff seeks the communications with regard to "all" Sheriff Department employees which would include

matters not relevant to this action.  Defendants' First Response at 21-22.  In reply, Plaintiff reiterates the documents requested are relevant to this action and must be produced.  Plaintiff's First Reply at 7.

The documents requested by Document Requests Nos. 35 and 36 are relevant to this action as they may contain admissions of Defendants' alleged discriminatory intent, *see Candlehouse, Inc. v. Town of Vestal, N.Y.*, 2013 WL 1867114, at * 25 (N.D.N.Y. May 3, 2013) (e-mails and communications between Town Board members and Town officials were potentially relevant to the plaintiff's intentional discrimination claims), Plaintiff has tailored the time-frame for which such documents are sought to the those generated between May 1, 2018 and September 30, 2019, which would be the period of time during which Plaintiff both was under investigation for the rounding violations and filed the EEOC Charges.  Moreover, Defendants' objections that these requests seek "all" communications ignores that Plaintiff seeks only those communications "concerning the Plaintiff."  Document Requests Nos. 35 and 36.

Plaintiff's First Motion is granted as to Document Requests Nos. 35 and 36.

### 8.      Defendants' Response to Document Request No. 37

Plaintiff's Document Request No. 37 seeks any written communications, not already produced, between Filicetti and any Niagara County Deputy Sheriff's Association member or representative concerning Plaintiff and sent or received between January 1 and September 30, 2019.  Dkt. 36-6 at 9.  Defendants responded that the request for "all" written communications with "any" member or representative, regardless of the subject matter or relevance to this litigation, is overly broad and unduly burdensome.  Dkt. 36-1 at 20.  Plaintiff did not narrow the request and argues in support

of Plaintiff's First Motion that the request is "narrowly focused on the time span, issues, and persons involved in Plaintiff's claim."  Plaintiff's First Memorandum at 17.  In opposition, Defendants assert that regardless of the breadth and burdensomeness of the request, it seeks information that is neither relevant nor proportional to the needs of the case and, further, any such written communications have already been produced. Defendants' First Response at 22.  In reply, Plaintiff merely reiterates the requested documents are relevant and the request is neither unduly broad nor overburdensome. Plaintiff's First Reply at 8.

The documents requested by Document Request No. 37 are relevant to Plaintiff's claims of disparate treatment and retaliation as they may include admissions supporting Plaintiff's claims.  *See Candlehouse, Inc.*, 2013 WL 1867114, at * 25.  Accordingly, Defendants are required to either produce the responsive documents or stipulate that such documents have already been produced.

Plaintiff's First Motion is GRANTED as to Document Request No. 37.

### 9.   Defendants' Response to Document Request No. 38

Document Request No. 38 seeks copies of all documents within Defendants' possession or control regarding inconsistencies between any document created by any Jail employee and the ID card time swipes recorded in the Jail's electronic access control system.  Dkt. 36-6 at 9.  In addition to the general objections that the request is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to matters at issue in this action, Defendants' response included that the request is unlimited in time and is duplicative to some extent of documents already provided.  Dkt. 36-12 at 20-21.  Plaintiff then limited the request "to the time period

January 1, 2018 to present," adding Plaintiff should not have to "guess" which of more than 2700 pages of documents already provided by Defendant respond to this request. January 28, 2022 Letter at 17.  In support of Plaintiff's First Motion, Plaintiff argues that as limited by the January 8, 2022 Letter, Document Request No. 38 is not overly broad nor unduly burdensome, explaining the documents requested are relevant to Plaintiff's claims of disparate disciplinary treatment based on her gender including that she was disciplined and prosecuted because of inconsistencies between her log entries and electronically recorded ID card time swipes while many others with similar inconsistencies were not disciplined.  Plaintiff's First Memorandum at 17-18.  In opposition, Defendants assert documents responsive to this request were already produced specifically, documents bearing Bates stamps DEF000006-000423, which include supervisory round review sheets for other corrections officers during the relevant time and which established no other officer committed such egregious violations of the Sheriff's rounding policies and procedures."  Defendants' First Response at 22.  In reply, Plaintiff argues with regard to Defendants' assertion that "no other officer committed such 'egregious' violations," that Defendants "have not provided any records of underline(any) violations," despite deposition testimony by former Jail Chief Defendant Payne that "certain inconsistencies in timing are, in his opinion, desirable." Plaintiff's First Reply at 8 (underlining in original).  Plaintiff thus argues any records of inconsistencies involving other officers should be provided to Plaintiff.  *Id*.

The documents requested by Document Request No. 38 are, as Plaintiff argues, relevant to her claims of disparate treatment as they constitute potential impeachment material.  *See Bolia v. Mercury Print Productions, Inc.*, 2004 WL 2526407, at * 2

(W.D.N.Y. Oct. 28, 2004) (impeachment evidence is relevant and thus discoverable (citing cases)).  Further, Defendants assertion that no records responsive to this request show any other corrections officer engaged in violations of the rounding policies and procedures that are as "egregious" as those allegedly committed by Plaintiff, coupled with Plaintiff's assertion that the specific Bates-stamped documents identified by Defendants do not show any other violations strongly suggests Defendants may have either produced or specifically identified documents that show no violations as egregious as those for which Plaintiff was disciplined, while other documents showing less egregious violations may not have been identified.  In either case, the requested documents may constitute impeachment material.  *Bolia*, 2004 WL 2526407, at * 2 (requested documents that may permit the plaintiff to determine whether the defendant provided untruthful deposition testimony was discoverable).  Accordingly, Defendants are ORDERED to either produce documents responsive to this request showing any such violations of the rounding policies and procedures, regardless of how egregious such violations are, or if no such documents exist, then submit an affidavit may by someone with knowledge attesting to this effect.

Plaintiff's First Motion is GRANTED with regard to Document Request No. 38 as discussed herein.

### 10.    Defendants' Response to Document Request No. 49

Document Request No. 49 seeks all internal communications pertaining to press releases or communications to the public concerning discipline or charges brought against any employee of the Jail during the period 2011 to present.[17]  Dkt. 36-6 at 11.

---

[17] Plaintiff separately requested the actual press releases and communications to the public in Document Request No. 48, Dkt. 36-6 at 11, to which Defendants responded by advising examples of press releases

In response, Defendants asserts the general objections that the request is overly broad, unduly burdensome, and not relevant or proportional to the needs of this case.  Dkt. 36-12 at 25.  Plaintiff did not "narrow" the request, but argues in support of Plaintiff's First Motion that the request pertains to only a ten year period and, as such, is not overly broad or unduly burdensome, and the requested documents pertain to Defendants' publicizing Plaintiff's arrest via news and social media accounts.  Plaintiff's First Memorandum at 18.  In opposition, Defendants argue they previously provided Plaintiff with several press releases regarding the arrests of other County and Sheriff employees who are male, which establishes Plaintiff's argument on this point is irrelevant to her disparate treatment claim.  Defendants' First Response at 22-23.  In reply, Plaintiff acknowledges receiving from Defendants some press releases, but maintains any internal communications concerning the press releases are relevant to Plaintiff's claims of disparate treatment and damages.  Plaintiff's Reply at 8.

Insofar as Defendants initially assert only bald and conclusory, boilerplate arguments that the information requested by Document Request No. 49 is overly broad, unduly burdensome, and either irrelevant or not proportional to the issues in this case, such generalized objections are insufficient and require an affidavit by someone with the requisite knowledge to attest explaining in detail the factual basis for the objection. *Guillory*, 2014 WL 4542468, at * 8.  Furthermore, Defendants' argument that Defendants' production of several press releases regarding the arrest of other corrections officers who were male establishes the information requested by Document Request No. 49 is irrelevant to Plaintiff's disparate treatment claim based on sex is a

---

issued by the County and the Sheriff regarding other instances involving the arrest of a corrections officer were provided in response to Document Request No. 1.  Dkt. 36-12 at 25.

legal conclusion which is not a viable objection to a discovery request.  *See Bausch & Lomb Inc. v. Alcon Laboratories, Inc.*, 173 F.R.D. 367, 377 (W.D.N.Y. 1995) (providing discovery that required forming a legal conclusion did not place onerous burden on requested party).

Plaintiff's First Motion is GRANTED as to Document Request No. 49.

### 11.   Defendants' Response to Document Request Nos. 50 and 51

Document Request No. 50 seeks "copies of all documents prepared by, or at the direction of, any employee of Defendant concerning Plaintiff during the period 2011 to 2020."  Document Request No. 51 seeks "copies of all correspondence between Plaintiff and Defendants, or concerning Plaintiff, by or to any employee of Defendant, or concerning Plaintiff by or to any outside person during the period 2011 to 2020." Plaintiff later narrowed the relevant time period to January 1, 2015 to December 31, 2020.  January 28, 2020 Letter.  Plaintiff advises that if Defendants provide documents responsive to Document Request Nos. 35 and 36, Plaintiff is willing to withdraw Plaintiff's First Motion with regard to Document Request Nos. 50 and 51.  Plaintiff's First Reply at 8-9.  Because the undersigned is ordering Defendant to produce documents responsive to Document Request Nos. 35 and 36, Discussion, *supra*, at 35-36, the court does not further address these requests.

Plaintiff's First Motion is DISMISSED as moot with regard to Documents Requests Nos. 50 and 51.

### H.   Spreadsheets

Upon reviewing Defendants' First Documents Responses, Plaintiff observed references in Bates-stamped documents DEF002544-2545 to spreadsheets pertaining

to the alleged observed discrepancies between Plaintiff's ID card time swipes and entries in the Officer's Activity Log indicating a round had been completed, and on which Lt. Harrer reportedly made notes and highlighted certain entries in red and green, as well as other references to copies of log entries Harrer reportedly highlighted in green and provided to Deputy Chief Enger on May 20, 2019.  Plaintiff's First Memorandum at 19.  Plaintiff argues that by letter dated May 11, 2022, she requested color copies of such spreadsheets but none were provided, nor have Defendants otherwise responded to the request, and that the spreadsheets are relevant to the issue of Plaintiff's alleged misconduct.  *Id*.  In opposition, Defendants assert they are trying to locate the subject spreadsheets and, if found, will produce them.  Defendants' First Response at 23.  Defendants further maintain the referenced spreadsheets are neither relevant to this action nor necessary for Plaintiff to prove her claims because the spreadsheets are merely a compilation of the times that Plaintiff either completed her rounds outside the required timeframes or logged that she completed a round when, in fact, Plaintiff had not.  *Id*. at 23-24.  In further support of Plaintiff's First Motion, Plaintiff argues Defendants have yet to produce the spreadsheets, and the information which Defendants maintains has already been provided to Plaintiff thus rendering the spreadsheets unnecessary is raw data rather than the compilation and analysis of such raw data which Defendants presented to higher-ranking officials and relied on in determining to pursue the criminal action against Plaintiff.  Plaintiff's Reply at 9.

It is significant that Defendants do not deny the spreadsheets did at one time exist.  As Plaintiff argues, the information already produced by Defendants is raw data and not in the spreadsheet format provided to the officials who made the determination

to pursue a criminal prosecution against Plaintiff for tampering with public records. Accordingly, the spreadsheets are relevant to Plaintiff's claims.  If Defendants have yet to produce the spreadsheets, they are ORDERED to do so.  Alternatively, if the spreadsheets cannot be found, Defendants are ORDERED to provide an affidavit made by someone with knowledge attesting to the steps undertaken, albeit unsuccessfully, to locate such spreadsheets.  Plaintiff's First Motion is GRANTED as to the requested spreadsheets.

### 3.     Plaintiff's Second Motion

On August 10, 2022, Plaintiff served Defendants with Plaintiff's Second Request for Production of Documents ("Second Discovery Requests"), Second Motion Exh. A (Dkt. 44-2), for which Defendants served a response on September 28, 2022 ("Second Discovery Response"), Second Motion Exh. B (Dkt. 44-3).  On October 7, 2022, Plaintiff filed Plaintiff's Second Motion supported by the attached Attorney's Affirmation [of Anna Marie Richmond, Esq.] in Support of Plaintiff's Motion to Compel (Dkt. 44-1) ("Second Richmond Affidavit"), Exhibits A through G (Dkts. 44-2 through 44-8) ("Plaintiff's Second Motion Exh(s). __"), and Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Compel (Dkt. 44-9) (Plaintiff's Second Memorandum").  On October 28, 2022, Defendants filed the Memorandum of Law in Opposition to Plaintiff's Motion to Compel (Dkt. 48) ("Defendants' Second Response"), attaching the Declaration [of Riane F. Lafferty, Esq.] in Opposition to Plaintiff's Motion to Compel (Dkt. 48-1) ("Second Lafferty Declaration"), with Exhibits A through L (Dkts. 48-2 through 48-8) ("Defendants' Second Motion Exh(s). ____").  On November 1, 2022, Plaintiff filed Plaintiff's Reply in Support of

Her Secon[d] Motion to Compel (Dkt. 49) ("Plaintiff's Second Reply"), attaching Exhibits

1 through 3 (Dkts. 49-1 through 49-3) ("Plaintiff's Second Motion Reply Exhibits").

Initially, insofar as Plaintiff's Second Motion was filed after the deadline for

motions to compel discovery had passed, the parties, in an exchange of e-mails on

September 28, 2022, Plaintiff's Second Motion Exh. C (Dkt. 44-4), agreed to extend the

deadline for motions to compel to October 10, 2022.  Defendants neither dispute the

extension of time nor argue Plaintiff's Second Motion is untimely filed.

Plaintiffs' Second Discovery Requests seek documents, specifically ID card time

swipe/push button readings, manual log entries, and post log entries in paper format,

pertaining to 51 specified rounds for which the ESRRs reflect officers were not in

compliance with ESRR procedures, Document Request Nos. 1, 2, and 3, and the same

information for an eight-month period contemporaneous with the time period at issue in

this case, *i.e.*, December 1, 2018 to July 8, 2019, for ten different correction officers for

whom numerous or significant discrepancies were reported on the ESRRs.  Document

Request Nos. 5, 6, and 7.[18]  In responding to these requests, Defendants argue each

request at issue is overly broad, unduly burdensome, and irrelevant and not proportional

to the needs of this action, as well as that Plaintiff has already been provided with such

information pertaining to Plaintiff's own timecard swipes and activity log reports for the

relevant time period, and that the information requested does not show any

discrepancies between ID card time swipes and activity log reports that are as

egregious as those detected for Plaintiff and for which Plaintiff pleaded guilty to a

criminal charge.  In support of Plaintiff's Second Motion, Plaintiff argues Defendants

---

[18] Document Request No. 4 is not at issue with regard to Plaintiff's Second Discovery Requests.

have not provided any records of rounds conducted by correction officers other than

Plaintiff, and that such information, for which Plaintiff seeks only the computer-

generated raw data, is necessary for Plaintiff to conduct an in-depth analysis similar to

the analysis by which Defendants determined Plaintiff had violated the ESRR policies

for which Plaintiff was criminally prosecuted.  Plaintiff's Second Memorandum at 2-4.  In

response, Defendants recount in detail the circumstances leading to the criminal

charges against Plaintiff following the random audit that revealed discrepancies

between Plaintiff's ID card time swipes and activity log entries, and Plaintiff's guilty plea

to criminal misconduct, Defendants' Second Response at 1-5, and further argue that the

Second Discovery Requests seek more than 8,000 documents which would be in

addition to the discovery provided so far which includes more than 3,433 documents,

which would pose an immense burden on Defendants for irrelevant information given

that no other random audit of any other correction officer showed time discrepancies as

egregious as those for which Plaintiff was criminally charged.  *Id*. at 5-10.  In reply,

Plaintiff argues the requested information is relevant to whether Plaintiff was subjected

to greater scrutiny than male correction officers, and also to retaliation for complaining

about disparate treatment, Plaintiff's Reply at 1-4, clarifying Plaintiff seeks only the raw

data and not an evaluation of the data.  *Id*. at 4-5.

Defendants have failed to establish how the requested discovery is overly broad,

and unduly burdensome by providing an affidavit made by a person with knowledge

explaining the factual basis for general objection in detail as required.  *See Guillory*,

2014 WL 4542468, at *8 (citing *Brown,* 2011 WL 2182775, at * 16)).  Moreover, as

Plaintiff argues, the information requested in Plaintiff's Second Discovery Requests is

directly relevant to Plaintiff's disparate treatment and retaliation claims because it allows for a side-by-side comparison of Defendants' treatment of the disciplinary measures taken with regard to the discrepancies found with regard to Plaintiff as compared to other correction officers.

Plaintiff's Second Motion is GRANTED.

**4.     Plaintiff's Third Motion**

On October 11, 2022, Plaintiff served Defendants with Plaintiff's Third Request for Production of Documents ("Third Discovery Requests"), for which Defendants served a response on November 10, 2022.  On November 15, 2022, Plaintiff filed a Notice of Supplemental Motion to Compel (Dkt. 50) ("Plaintiff's Third Motion"), supported by the attached Attorney's Affirmation [of Elizabeth Tommaney, Esq.] in Support of Plaintiff's Supplemental Motion to Compel (Dkt. 50-1) ("Tommaney Affidavit"), with Exhibits A through G (Dkts. 44-2 through 44-8) ("Plaintiff's Third Motion Exh(s). __").  On November 29, 2022, Defendants filed the Memorandum of Law in Opposition to Plaintiff's Third Motion to Compel (Dkt. 52) ("Defendants' Third Response"), attaching the Declaration [of Riane F. Lafferty, Esq.] in Opposition to Plaintiff's Third Motion to Compel (Dkt. 52-1) ("Third Lafferty Declaration"), with Exhibits A through F (Dkts. 52-2 through 52-7) ("Defendants' Third Motion Exh(s). ___").  On December 6, 2022, Plaintiff filed Plaintiff's Memorandum of Law in Reply Regarding Plaintiff's Supplemental Motion to Compel and in Support of Her Second Supplemental Motion to Compel (Dkt. 54) ("Plaintiff's Third Reply").

Plaintiff's Third Discovery Request seeks "Booking Sheets" for all women inmates received in the Jail on 48 specific dates, limited to one shift per specified date,

which Plaintiff maintains is limited in scope and "is directly relevant to assist Plaintiff in documenting differential treatment based on her gender and in retaliation for complaints of discrimination." Tommaney Affidavit ¶¶ 5, 6, 8; Dkt. 50-2, *passim*. In responding to the discovery requests, Defendants assert general objections including the requests are overly broad, unduly burdensome, and irrelevant and not proportional to the needs of this action. Dkt. 50-3, *passim*. In support of Plaintiff's Third Motion, Plaintiff argues the requested information is "necessary to establish her claim that she was subjected to greater scrutiny that similarly situated male corrections officers, and that she was subjected to retaliation for having filed a complaint with the EEOC." Tommaney Affidavit ¶ 19. In opposition, Defendants argue Plaintiff's Third Motion is untimely filed, Defendants' Third Response at 3-4, as the Third Amended Scheduling Order (Dkt. 41) extended to September 9, 2022, the cut-off date for such motions, and the subject documents are not relevant nor proportional to the needs of this action because the Jail does not maintain any "booking sheets," *id*. at 4, and even if such documents existed, they would be irrelevant to Plaintiff's claims of disparate treatment based on sex and retaliation. *Id*. at 4-5. In reply, Plaintiff admits Plaintiff's Third Motion was not filed prior to the cut-off for motions to compel but attributes the belated filing to the fact that the Third Request for Production of Documents was served after the deadline for motions to compel, Defendants did not serve their response until November 10, 2022, Plaintiff's Third Reply at 2-3, and further admits that counsel did not attempt to informally resolve the dispute so as to "promptly bring this matter before the Court," *id*. at 3, and argues the documents sought in the Third Discovery Request is relevant to Plaintiff's contention that she was disciplined for conduct for which male co-workers are not. *Id*. at 3-5.

Not only is Plaintiff's Third Motion untimely filed, as Plaintiff admits, Plaintiff's Reply at 3-4, but, as Plaintiff also admits, *id*. at 3, Plaintiff did not seek to informally resolve the dispute prior to filing the motion as required.  Fed. R. Civ. P. 37(a)(1) ("Rule 37(a)(1)") (providing a motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."). Significantly, a party's failure to comply with Rule 37(a)(1)'s "meet and confer" requirement before filing Plaintiff's Third Motion is grounds to deny the motion.  *See McFadden v. Annucci*, 2022 WL 17126109, at * 3 (W.D.N.Y. Nov. 22, 2022) (citing cases).

Accordingly, Plaintiff's Third Motion is DENIED both as untimely, and for failure to comply with Rule 37(a)(1)'s meet and confer requirement.

**5.     Costs**

Rule 37(a)(5)(A) requires sanctions, including attorney fees, be imposed where a party fails to provide discovery and where the failure to provide discovery is not substantially justified, or where other circumstances would not make an award unjust, Fed.R.Civ.P. 37(a)(5)(A), and upon the opposing party where a motion to compel is denied.  *See* Rule 37(a)(5)(B).  Substantial justification may be found where the refusal to provide discovery has a reasonable basis in fact or law.  *See Scott-Iverson v. Independent Health Association*, 2017 WL 759843, at * 2 (W.D.N.Y. Feb. 28, 2017) (a party's failure to provide discovery may be substantially justified where a genuine dispute exists, there is an objectively reasonable basis for the failure, or the failure was based on factors beyond the requested party's control).

Here, the court finds Defendants' purported failure to provide the discovery requested by Plaintiff's First and Second Motions was not substantially justified. Defendant shall therefore show cause not later than 20 days from the date of this Decision and Order why the costs of Plaintiff's First and Second Motions should not be awarded as required by Rule 37(a)(5)(A). Plaintiff's response shall be filed within 10 days thereafter; Defendants' reply shall be filed within 5 days thereafter.

Similarly, Defendant, as the opposing party, may be entitled to attorney fees incurred in opposing Plaintiff's Third Motion which was filed after the deadline for such motion and without complying with Rule 37(a)(1)'s meet and confer requirement. Plaintiff shall therefore show cause not later than 20 days from the date of this Decision and Order why Defendants' costs of opposing Plaintiff's Third Motion should not be awarded as required by Rule 37(a)(5)(B).  Defendants' response shall be filed within 10 days thereafter; Plaintiff's reply shall be filed within 5 days thereafter.

Oral argument shall be at the court's discretion.

## **CONCLUSION**

Based on the foregoing, Plaintiff's First Motion (Dkt. 36), is GRANTED in part, and DISMISSED as moot in part; Plaintiff's Second Motion (Dkt. 44), is GRANTED; Plaintiff's Third Motion (Dkt. 50), is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 16, 2023
            Buffalo, New York