UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALEXANDRA MATALAVAGE,

Plaintiff,

-vs-

SHERIFF OF THE COUNTY OF NIAGARA, et al.,

Defendants.

20-CV-1254-MAV-LGF

DECISION & ORDER

## INTRODUCTION

Plaintiff Alexandra Matalavage initiated this action alleging gender discrimination and retaliation during her employment as a Corrections Officer ("CO") at Niagara County Jail. ECF No. 1. Plaintiff asserts discrimination and retaliation claims under Title VII of the Civil Rights Act (42 U.S.C. § 2000e) and the New York State Human Rights Law ("NYSHRL"), as well as a violation of 42 U.S.C. § 1983, against Defendants Sheriff of the County of Niagara, the County of Niagara, Michael Filicetti, Kevin Payne, and Michael Prygon (now dismissed). ECF No. 1.

Pending before the Court is Plaintiff's motion for partial summary judgment on the issue of disparate treatment, ECF No. 85, and Defendants' motion for summary judgment, ECF No. 88. For the following reasons, Plaintiff's motion is denied, and Defendants' motion is granted in part and denied in part.

## BACKGROUND

Plaintiff, who is a woman, was employed by Defendants at the Niagara County Jail from 2008 to 2020. ECF No. 92-1 ¶¶ 1–2. She had generally positive performance reviews. *See* ECF No. 92-1 ¶¶ 63–64; *see also* ECF No. 85-22 (Plaintiff performance

evaluations). Defendants contend that Plaintiff had a history of discipline for tardiness, absences, insubordination, failure to conduct security inspections, misconduct, untruthfulness, sick leave abuse, and a headcount error. ECF No. 93-17 ¶¶ 26–35.

Niagara County Jail houses both male and female inmates. ECF No. 93-17 ¶ 52. Plaintiff was most often assigned to the third floor, where the female inmates are housed. ECF No. 93-17 ¶ 56. Male and female COs could be assigned to any floor of the jail, but Plaintiff contends that women were more likely to be assigned to the third floor. ECF No. 93-17 ¶¶ 53–54. The three floors had the same heating and cooling system. ECF No. 93-17 ¶ 55. All COs had access to a breakroom on the first floor of the jail. ECF No. 93-17 ¶¶ 57–59.

Plaintiff took the Civil Service Exam and scored a 95%, making her eligible for future promotions to Sergeant as of December 18, 2018. ECF No. 92-1 ¶¶ 10, 12–13; *see also* ECF No. 85-8 (civil service eligible list). Under the County's Civil Service Rules, candidates "ranked above or tied in score with the third candidate from the top of the list" were eligible for promotion. ECF No. 93-17 ¶ 39. Plaintiff contends that she had the second highest score on the eligibility list, while Defendants contend that she was ranked third. ECF No. 93-17 ¶ 43. Either way, she was in the top three and therefore eligible for promotion. *See* ECF No. 93-17 ¶¶ 39–40, 43.

COs are responsible for making "rounds" in the jail, which means they "walk through their assigned post, and observe the inmates." ECF No. 92-1 ¶¶ 16–17. Rounds are required to be conducted every 15 minutes for "active supervision," which

is for medical and special housing units. ECF No. 92-1 ¶¶ 21–22. Rounds are required every 30 minutes for "general supervision." ECF No. 92-1 ¶ 23. When Plaintiff worked at the jail, the COs recorded rounds by swiping their ID cards at sensors along the route, and the swipes were recorded in an electronic database. ECF No. 92-1 ¶¶ 18–19. The COs were also required to document their rounds in a computer database, which could be viewed as "post logs." ECF No. 92-1 ¶ 20.

Defendants were required to ensure compliance with rounds under applicable state regulations, and in April 2018, the New York State Commission of Corrections audited Niagara County Jail and said it was out of compliance. ECF No. 93-17 ¶¶ 63–64. In May 2018, Niagara County Jail began a new system of compliance to monitor rounds by conducting Electronic Supervisory Round Reviews ("ESRRs"). ECF No. 92-1 ¶ 24. The ESRRs randomly selected a shift and looked at swiped cards and post logs to determine if the COs were appropriately conducting their rounds. ECF No. 92-1 ¶ 25; *see also* ECF No. 88-32 (ESRR log sheets). The parties do not dispute that the ESRRs were conducted "at random for all Correction Officers, regardless of gender or any other characteristic." ECF No. 93-17 ¶ 69.

On March 28, 2019, an ESRR revealed late and/or missed rounds by Plaintiff. ECF No. 92-1 ¶ 29. Defendants contend that Plaintiff had 26 discrepancies on March 11, 2019, but there is no ESRR log sheet reflecting those discrepancies. ECF No. 92-1 ¶¶ 30–32. Lieutenant Joseph Moll, who identified the discrepancies, informed Captain Jeffrey Kolbe. ECF No. 92-1 ¶ 33. Defendant Payne ordered a further review into Plaintiff's rounds, ECF No. 93-17 ¶ 80, and Kolbe directed Lieutenant Bryan

Boddecker to review all of Plaintiff's rounds from January 14, 2019 to March 28, 2019. ECF Nos. 92-1 ¶ 34; 93-17 ¶ 81. Defendant Filicetti, who was the Undersheriff, ordered a full internal investigation into Plaintiff's practices and documentation of rounds. ECF No. 93-17 ¶ 82.

Defendants had a meeting with Plaintiff on April 9, 2019, during which Defendants told her about the investigation into her rounds and asked her questions about specific rounds she had conducted. ECF No. 92-1 ¶¶ 35–38. Plaintiff could not remember specific details about the rounds asked about, but said it was "her intention to log truthfully anything that happened during her rounds." ECF No. 92-1 ¶¶ 40–41.

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on April 22, 2019 alleging disparate discipline and working conditions and the denial of a promotional opportunity due to her gender. ECF Nos. 92-1 ¶ 54; 93-17 ¶ 105.

Defendants met with Plaintiff again on June 11, 2019 and offered her the chance to resign rather than being fired. ECF No. 92-1 ¶¶ 48, 52. Defendant Filicetti told Plaintiff during the meeting that Defendants had conducted "a separate and parallel criminal investigation . . . into the falsification of records . . . [which] has been almost completed, they've conferred with the DA's office, and the recommendation is felony level charges." ECF No. 93-17 ¶ 87 (response). Filicetti also said, "there is an alternative to that. We would accept a resignation." ECF No. 93-17 ¶ 87 (response) (quoting ECF No. 85-16 (interview transcript)).

Plaintiff filed additional charges with the EEOC on June 25, 2019 alleging retaliation. ECF Nos. 92-1 ¶ 54; 93-17 ¶ 106.

Defendants served Plaintiff with a Notice of Discipline on July 8, 2019. ECF No. 92-1 ¶ 55; *see also* ECF No. 85-18 (Notice of Disciplinary Charges). The Notice of Discipline identified 48 shifts during which Plaintiff was alleged to have conducted late or falsified rounds, and sought the penalty of termination of employment. ECF Nos. 92-1 ¶ 56; 93-17 ¶¶ 89–92. Plaintiff intended to proceed to arbitration on the Notice of Discipline, and was placed on an administrative suspension. ECF No. 93-17 ¶¶ 93–94.

Defendants offered Plaintiff a settlement agreement in early July 2019. ECF No. 92-1 ¶ 57. The settlement proposed that Plaintiff accept a 60-day suspension without pay and she would not be fired, and Defendants would not pursue criminal charges against her, if her union agreed not to grieve the Notice of Discipline and if she agreed to withdraw her EEOC complaints. ECF No. 92-1 ¶ 59; *see also* ECF No. 85-19 (settlement offer). Plaintiff rejected the settlement offer. ECF No. 92-1 ¶ 60.

Plaintiff contends that male COs had similar problems with their rounds, including large gaps and falsely reporting rounds. ECF No. 92-1 ¶¶ 70–124. Plaintiff further contends that in response to their alleged misconduct, Defendants merely spoke to those male COs and told them "what was necessary to avoid similar problems in the future." ECF No. 92-1 ¶¶ 28, 90. The male COs were not investigated further, disciplined, or criminally prosecuted for the discrepancies. ECF No. 92-1 ¶¶ 65–66, 89.

Defendants contend that they determined that the male COs who had discrepancies in the ESRRs "had completed their rounds and not falsified any records." ECF No. 93-17 ¶ 76. They further contend that "no other random audit of Correction Officer rounds through the ESRR round review had revealed such egregious rounding discrepancies or the false logging of rounds." ECF No. 92-1 ¶ 65 (response); *see also* ECF No. 93-17 ¶ 75. Defendants also contend that other female COs who had discrepancies in their rounds were spoken to without being disciplined. ECF No. 92-1 ¶ 90 (response).

On July 30, 2019, while Plaintiff was on leave, a Sergeant position became available, and Defendants sent Plaintiff a letter telling her that she "had been certified" for the position. ECF No. 92-1 ¶ 67. Defendants did not conduct interviews for the vacant Sergeant position. ECF No. 93-17 ¶ 48. They considered "Civil Service exam score, feedback from supervisors, work records, disciplinary records, and prior experience at the Jail" to decide who to promote. ECF No. 93-17 ¶ 50. Defendants promoted Officer Scott Sexton, a male CO who scored 100% on the Civil Service Exam, to the open Sergeant position. ECF No. 93-17 ¶ 51. Officer Richard Smith also scored 100% on the Civil Service Exam. ECF No. 93-17 ¶ 51; *see also* ECF No. 85-8 (civil service eligible list with scores).

Lieutenant Brian Harrer filed a felony complaint against Plaintiff in Lockport Town Court. ECF No. 92-1 ¶ 61. Plaintiff was arrested on August 27, 2019 and charged with five counts of tampering with public records in the first degree, a felony. ECF No. 93-17 ¶ 96. On the same day, Defendants issued a press release regarding

Plaintiff's arrest. ECF No. 93-17 ¶ 99.

Plaintiff filed a third charge with the EEOC on August 29, 2019, alleging retaliation. ECF No. 93-17 ¶ 107.

On February 11, 2020, Plaintiff pleaded guilty to one count of tampering with public records in the second degree, a misdemeanor. ECF Nos. 92-1 ¶ 62; 93-17 ¶ 104. She resigned from her employment and informed Defendants that she no longer wished to arbitrate her disciplinary charges. ECF Nos. 92-1 ¶ 62; 93-17 ¶ 103.

Plaintiff initiated this case on September 9, 2020. ECF No. 1. She filed her motion for partial summary judgment on March 22, 2024. ECF Nos. 85–87. Defendants filed an opposition, ECF No. 92, and Plaintiff filed a reply, ECF No. 97. Defendants also filed a motion for summary judgment on March 22, 2024. ECF No. 88. Plaintiff filed an opposition, ECF No. 93, and Defendants replied, ECF No. 96.

On October 21, 2025, this case was reassigned to the undersigned. ECF No. 98. Both motions are ripe for this Court's decision.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that summary judgment will be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court "must 'construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in [their] favor." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quoting *Costello v. City of Burlington*, 632 F.3d 41, 45

(2d Cir. 2011)) (brackets omitted).

"[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

"When the nonmoving party will bear the ultimate burden of proof at trial, the moving party's burden is satisfied if it can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Pavel v. Plymouth Mgmt. Grp., Inc.*, 198 F. App'x 38, 40 (2d Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party, summary judgment is improper." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995).

Courts must take an "extra measure of caution" in evaluating employment discrimination claims on summary judgment because "direct evidence of discriminatory intent is rare and such intent often must be inferred from

circumstantial evidence found in affidavits and depositions." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001), *abrogated on other grounds by, Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). Nevertheless, the general principles underlying summary judgment apply "even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

## DISCUSSION

### I. Plaintiff's Motion for Partial Summary Judgment

In her motion for partial summary judgment, Plaintiff seeks a judgment that she "was disciplined more harshly tha[n] similarly situated male officers." ECF No. 87 at 28. Specifically, she argues that Defendants treated similarly situated male employees better than her because male employees had similar discrepancies in their rounds and were spoken to rather than investigated further, disciplined, or referred for criminal charges. ECF No. 87 at 18–28. Plaintiff contends that the issue of Defendants' motivation should proceed to trial, however. ECF No. 87 at 28.[1]

Defendants argue in response that the men Plaintiff identifies were not similarly situated to her. ECF No. 92 at 11–12. They contend that no one else had discrepancies as severe as Plaintiff's. ECF No. 92 at 13–17, 19–21. Further, they argue that they had no knowledge of the discrepancies that Plaintiff identified after a thorough review of the discovery because they were concerned only with the results of the ESRRs. ECF No. 92 at 17–19.

---

[1] As such, Plaintiff appears to seek summary judgment on one element of her prima facie case (an inference of discriminatory intent) only, and not on the remainder of the burden-shifting analysis on the ultimate issue of discriminatory intent.

To "establish a prima facie case of Title VII disparate treatment," a plaintiff must show: "1) that [s]he belonged to a protected class; 2) that [s]he was qualified for the position [s]he held; 3) that [s]he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).

"A showing of disparate treatment—that is, a showing that an employer treated plaintiff 'less favorably than a similarly situated employee outside [the plaintiff's] protected group'—is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

"When a plaintiff relies on disparate treatment to raise an inference of discrimination, the 'comparator must be similarly situated to the plaintiff in all material respects.'" *Jackson v. Amazon.com, Inc.*, No. 25-72, 2026 WL 742446, at *2 (2d Cir. Mar. 17, 2026) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010), *superseded by statute on other grounds as recognized in*, *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 343 (S.D.N.Y. 2021). "An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Ruiz*, 609 F.3d at 493–94 (quoting *Graham*, 230 F.3d at 40). "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and

comparator's cases, rather than a showing that both cases are identical." *Graham*, 230 F.3d at 40.

The undisputed facts underlying Plaintiff's request include that the policy required COs to complete rounds in 15-minute intervals for active supervision and in 30-minutes intervals for general supervision. ECF No. 92-1 ¶¶ 21–23. The parties agree that male COs who worked at the Niagara County Jail at the same time as Plaintiff included Dillon Olear, Raymond Coyle, Bruce Ludemann, Daniel Stevens, Sal Palame, Thomas Schultz, Andrew Donner, Bryan Woodburn, Greg Gajkowski, Nick Cirrito, and others. ECF No. 92-1 ¶ 69. Finally, the parties do not dispute that Plaintiff was the only CO "disciplined for rounding discrepancies between May 2018 . . . and December 5, 2022," and was the only CO "criminally prosecuted for deficiencies in conducting and recording their rounds." ECF No. 92-1 ¶¶ 65–66.

The parties dispute whether the conduct of the male COs was comparable to Plaintiff's conduct. *See, e.g.*, ECF No. 92-1 ¶ 65. Plaintiff submits her Notice of Discipline, which outlined the length of gaps during her rounds and stated that she made false log entries of rounds. ECF No. 85-18. Notably, her longest alleged gap was 107 minutes when a 30-minute interval was required. *See* ECF No. 85-18 at 9. Plaintiff presents a chart to compare the rounds of male COs. ECF No. 87 at 19–25. The chart is derived from Officer Activity Logs, which Plaintiff attaches to her motion. *See* ECF Nos. 85-27–85-31, 86-1–86-29. The male COs had gaps in their rounds of between 60 and 344 minutes, where 15- or 30-minute intervals were required. *See* ECF No. 87 at 19–25. Plaintiff also alleges that the male COs engaged in false entry

reporting. ECF No. 87 at 19–25. Plaintiff contends that the evidence from the logs demonstrates that the male COs, like her, had long gaps between rounds and, at times, falsified log records to say they completed a round when they did not. ECF No. 87 at 18–25.

Defendants do not dispute that the logs showed the gaps in rounds indicated in Plaintiff's chart, *see* ECF No. 92-1 at 15–81, but contend that the gaps for the male COs were not as severe as Plaintiff's or were explainable, and deny that any male CO falsified records. ECF No. 92 at 6–8, 14–15. Defendants specifically contend that the male COs actually completed timely rounds, as verified by video, but the rounds were not properly recorded by the swipe card or in the log. ECF No. 92 at 8–9, 14, 16. Defendants therefore argue that the conduct of the male COs was not as severe as Plaintiff's, which justified the difference in response, and thus the male COs were not similarly situated. *See Graham*, 230 F.3d at 42 ("to be similarly situated, [the employees] must have been subject to the same disciplinary standards and have engaged in conduct of comparable seriousness").

The question of whether the conduct was of comparable seriousness should go to the jury. *See Graham*, 230 F.3d at 39 ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury."); *see generally Apex Oil Co. v. DiMauro*, 822 F.2d 246, 253 (2d Cir. 1987), *abrogated on other grounds as recognized in*, *In re Treasury Sec. Auction Antitrust Litig.*, 595 F. Supp. 3d 22, 48 (S.D.N.Y. 2022), *aff'd sub nom. City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381 (2d Cir. 2024) ("[W]hile some assessing of the evidence is

necessary in order to determine rationally what inferences are reasonable and therefore permissible, it is evident that the question of what weight should be assigned to competing permissible inferences remains within the province of the fact-finder at a trial.").

Plaintiff further argues that Defendants did not check video to verify the gaps or missed rounds as often as they contend, that the cameras were often inoperable, and that Defendants did not rely on video for most of the misconduct alleged in the Notice of Discipline against her. ECF No. 97 at 9–11. The questions of whether and how often Defendants checked the video, and why, relate to the alleged disparate treatment and are questions of fact for the jury. Of note, the ESRRs that Plaintiff submitted in support of her motion indicate that video was used to verify compliance or non-compliance for those reviews of male COs. *See* ECF No. 85-13.

Defendants also argue that there is a dispute of fact regarding their knowledge of the male COs' allegedly comparable conduct. ECF No. 92 at 17–19. "An employee who allegedly engaged in misconduct comparable to the plaintiff's is not similarly situated to the plaintiff when the employer is unaware of what the comparator employee supposedly did." *Dinkins v. Suffolk Transp. Serv., Inc.*, No. 07-CV-3567 (JFB), 2010 WL 2816624, at *10 (E.D.N.Y. July 15, 2010). Plaintiff argues in reply that Defendants had a duty to know of the alleged comparable misconduct. ECF No. 97 at 5–6. Defendants point to no evidence supporting their argument of lack of knowledge, so cannot defeat summary judgment by relying on this argument alone. Nevertheless, there remains a question of fact on the comparable severity of the

conduct, so Plaintiff is not entitled to summary judgment regardless of whether there is also an issue of fact on Defendants' knowledge.

In sum, Plaintiff has not met her burden to demonstrate entitlement to summary judgment because the comparable severity of the alleged misconduct by male COs is a determination for the jury to make. Based on the evidence presented, Plaintiff is not entitled to summary judgment that she "was disciplined more harshly tha[n] similarly situated male officers." ECF No. 87 at 28.

## II. Defendants' Motion for Summary Judgment

Defendants seek summary judgment on all of Plaintiff's claims. ECF No. 88. Plaintiff raised eight causes of action in her complaint, ECF No. 1 at 17–29, and seven remain, *see* ECF No. 26 (stipulation dismissing claim against Defendant Prygon). The Court addresses each.

### A. Disparate treatment under Title VII and the NYSHRL

Plaintiff's first cause of action alleges discrimination in violation of Title VII for subjecting her to poorer working conditions than the male COs. ECF No. 1 at 17–18. Specifically, Plaintiff alleges that female COs were assigned to women's housing units, which had extreme temperatures and no access to cold drinks or microwaves, and that women were denied the opportunities of special teams and assignments, more favorable working hours, and promotions. ECF No. 1 at 5–6, 9–10. Plaintiff's fourth cause of action alleges discrimination in violation of the NYSHRL for the same alleged disparate working conditions, and for alleged disparate treatment regarding discipline for errors in rounds. ECF No. 1 at 20–22.

Defendants argue entitlement to summary judgment because Plaintiff cannot establish an adverse employment action or an inference of discrimination. ECF No. 88-42 at 16. Defendants dispute that female COs were exclusively assigned to female units. ECF No. 88-42 at 16. They contend that all COs had access to the same staff breakroom and the entire building used the same HVAC system. ECF No. 88-42 at 17. Finally, Defendants argue that the working conditions described were minor inconveniences and not adverse employment actions. ECF No. 88-42 at 18–19.

Regarding Plaintiff's argument of disparate treatment in discipline, Defendants argue that no other COs committed as severe misconduct as Plaintiff did, so Plaintiff cannot prove disparate treatment or discriminatory intent. ECF No. 88-42 at 19–23. Further, Defendants argue that they rebutted any inference of discriminatory intent because Plaintiff pleaded guilty to the underlying misconduct. ECF No. 88-42 at 23–25.

In response, Plaintiff argues that women were disproportionately assigned to female housing units, were denied assignments to special teams and posts, and were denied promotional opportunities. ECF No. 93 at 13–14. Plaintiff also points to the arguments made in support of her motion for summary judgment, ECF No. 87, and clarifies that Defendants' actions after conducting the random review, and not the review itself, was discriminatory because Defendants merely spoke to the male COs about their discrepancies while they initiated an internal investigation and disciplined her for hers. ECF No. 93 at 16–17.

A plaintiff may "establish a prima facie case of Title VII disparate treatment

by showing 1) that [s]he belonged to a protected class; 2) that [s]he was qualified for the position [s]he held; 3) that [s]he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Feingold*, 366 F.3d at 152.

The elements for a prima facie case of discrimination under the NYSHRL are the same as under Title VII for claims that accrued before October 2019. *See Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020). "The NYSHRL . . . was amended in 2019 to align with the [New York City Human Rights Law's] more liberal pleading standard." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122–23 (2d Cir. 2024). As such, "for causes of action that accrue after October 11, 2019, under the NYSHRL, a plaintiff must allege only that the plaintiff was 'treated less well . . . because of a discriminatory intent,' *i.e.*, that the unequal treatment was based, at least in part, on a protected characteristic." *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 275 (S.D.N.Y. 2024) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).

"Claims of adverse action employment discrimination under Title VII and the NYSHRL are governed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Luo v. AIK Renovation Inc.*, 23-cv-5878 (LJL), 2024 WL 4444283, at *6 (S.D.N.Y. Oct. 8, 2024). Under the *McDonnell Douglas* burden-shifting framework, "[o]nce a plaintiff has made out a prima facie case, the employer is required to offer a legitimate, nondiscriminatory business rationale for its conduct." *Feingold*, 366 F.3d at 152. "If the defendant has

stated a neutral reason for the adverse action, 'to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Id.* (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.1997)).

**1. Working conditions**

Beginning with Plaintiff's claims relating to the working conditions for female COs, the Court agrees with Defendants that Plaintiff has not established disparate treatment because all of the employees, male and female, were subjected to the same conditions. Indeed, the undisputed evidence establishes that both men and women COs worked on any of the three floors of the jail. ECF No. 93-17 ¶ 54. "All three floors ha[d] exactly the same heating and cooling system." ECF No. 93-17 ¶ 55. Finally, all COs had "access to a staff breakroom with a microwave, vending machine, and cold drinks." ECF No. 93-17 ¶ 57.

The longer distance to travel from the third floor to the first-floor shared breakroom constitutes a mere inconvenience that is not actionable, and was not disparate treatment because all COs were assigned to all floors. *See* ECF No. 93-17 ¶ 54; *see, e.g.*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89 (2d Cir. 2015) (teacher unable to use his preferred classroom did not have a claim of discrimination because the workplace conditions he complained of were "mere inconveniences or annoyances that did not alter [his] employment in a materially adverse way").

As such, Defendants' motion for summary judgment on Plaintiff's disparate

treatment claim relating to working conditions is granted, and that claim is dismissed. *See, e.g.*, *Bunten v. Donat*, No. 21-CV-04588 (NSR), 2024 WL 1640054, at *10 (S.D.N.Y. Apr. 16, 2024), *rev'd and remanded on other grounds sub nom. Brown v. Donat*, No. 24-1344-CV, 2025 WL 1430572 (2d Cir. May 19, 2025).

**2. Special teams and assignments**

Defendants are also entitled to summary judgment on Plaintiff's disparate treatment claims that women were denied assignments to special teams and posts, which in turn led to women being denied promotional opportunities. ECF No. 93 at 13. Plaintiff does not establish, or even allege, that she was personally denied assignment to a special team or post or assigned a worse schedule than a male CO. Her claim that she was specifically denied a promotion is raised in a separate cause of action (claim two). Notably, Plaintiff raises only individual claims of disparate treatment. As such, she "must establish [s]*he* was the victim of [ ] discrimination" specifically. *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) (emphasis in original). Evidence of alleged systematic discrimination is relevant to an individual claim, but "cannot relieve the plaintiff of the need to establish each element of his or her claim." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 149 (2d Cir. 2012). Plaintiff has failed to present evidence of an individual claim of disparate treatment related to the failure to assign her to special teams or assignments because she has not alleged that she personally sought such positions or was denied them. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998). As such, to the extent Plaintiff raises a claim of disparate treatment related to special assignments,

Defendants are entitled to summary judgment.

### 3. Investigating and disciplining round discrepancies

Defendants are not entitled to summary judgment on Plaintiff's claims relating to disparate treatment in disciplining COs for discrepancies in rounds. For the reasons discussed in the context of Plaintiff's motion for summary judgment, factual disputes remain about whether the conduct of Plaintiff and the male COs was of comparable severity. Plaintiff attempts to establish an inference of discrimination through showing disparate treatment. *See Mandell*, 316 F.3d at 379. There is a question of fact regarding whether Plaintiff can establish a prima facie case of discrimination, so Defendants are not entitled to summary judgment.

Moreover, even if the case proceeded to the second step in the burden-shifting framework, and Defendants presented their neutral reason for investigating and disciplining Plaintiff—that her misconduct was worse than the conduct of the male COs, *see* ECF No. 88-42 at 23–25—summary judgment is not appropriate because Plaintiff may be able to prove pretext. "In proving a case under Title VII, following the defendant's proffer of a justification, a plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010); *see Bart v. Golub Corp.*, 96 F.4th 566, 576 (2d Cir. 2024). Here, Plaintiff can attempt to use the alleged disparate treatment to establish pretext. *See Graham*, 230 F.3d at 43 ("Were a jury to find on these facts that there was disparate treatment in [defendant's] disciplining of plaintiff when compared to similarly situated employees, it could also find that

[defendant's] proffer of a non-discriminatory reason for [plaintiff's] dismissal was pretextual."). Thus, a jury must decide if the conduct of the male COs was of comparable severity as Plaintiff's misconduct both for Plaintiff to establish an inference of discrimination for her prima facie case, and to attempt to establish pretext.

Defendants argue that Plaintiff's guilty plea precludes a finding of pretext. ECF No. 88-42 at 24. The Court disagrees. Defendants are correct that Plaintiff's guilty plea constituted an admission to the conduct underlying the crime to which she pleaded guilty. *See Class v. United States*, 583 U.S. 174, 183 (2018) ("[A] valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.'") (quoting *United States v. Broce*, 488 U.S. 563, 573–74 (1989)). Yet Plaintiff's admission to some misconduct[2] does not mean that her conduct was not similar to the alleged conduct of the male COs. *See Bart*, 96 F.4th at 576–77 (plaintiff's admission to conduct underlying the defendant's stated

---

[2] Plaintiff is correct that she did not admit to all the facts in the Notice of Discipline, or to the felony charges against her, by pleading guilty to a misdemeanor. *See* ECF No. 93 at 25; *People v. Griffin*, 166 N.E.2d 684, 686 (N.Y. 1960) (a plea to a lesser crime "does not presuppose the truth of the facts pleaded in the indictment").

Plaintiff argues that she "has never 'admitted' to knowingly having made a false entry in any record of a public office or public servant." ECF No. 93 at 26. Yet she pleaded guilty to tampering with public records in the second degree, a Class A misdemeanor, in violation of New York Penal Law § 175.20, ECF No. 93 at 26, and knowingly making a false entry (or removing, mutilating, destroying, concealing, or falsely altering a public record) is an element of that offense. "A guilty plea is an unconditional admission of guilt" and "constitutes 'an admission of all the elements of a formal criminal charge.'" *United States v. Rosen*, 409 F.3d 535, 549 (2d Cir. 2005) (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969)).

Plaintiff's arguments that her plea colloquy did not include a discussion of the underlying facts does not change her admission to violating New York Penal Law § 175.20, as "New York law does not require a factual inquiry when a defendant pleads guilty to a lesser crime than the offense charged in the indictment." *Torres v. McGrath*, 407 F. Supp. 2d 551, 558–59 (S.D.N.Y. 2006).

reason for terminating her did not preclude pretext). If Plaintiff is correct that the male COs engaged in comparable conduct, then they could have been subjected to criminal charges as well. Whether the male COs engaged in misconduct that was as severe as Plaintiff's, and whether they should have been disciplined in the same way, are questions of fact for the jury to resolve.

In sum, Defendants are entitled to summary judgment on Plaintiff's claims relating to her working conditions (temperature and access to the breakroom), and the alleged failure to assign women to special teams and assignments. Defendants are not entitled to summary judgment regarding Plaintiff's claims of disparate treatment in investigating and disciplining for discrepancies in rounds.

**B. Failure to promote under Title VII**

Plaintiff alleges discrimination due to the failure to promote under Title VII. ECF No. 1 at 18 (claim two). Defendants argue that Plaintiff cannot establish an inference of discrimination because the ESRR was random and not targeted to her. ECF No. 88-42. Further, Defendants argue that the Sergeant position was not vacant until July 2019, after the investigation, so the investigation could not have been motivated by a desire to disqualify her. ECF No. 88-42 at 26. Defendants argue that Plaintiff remained eligible for the promotion despite the investigation, so the investigation did not affect her failure to get the promotion. ECF No. 88-42 at 27–28. Finally, Defendants argue that Plaintiff could not prove pretext even if she could establish a prima facie case. ECF No. 88-42 at 28.

In response, Plaintiff argues that someone told her that the investigation

disqualified her from the promotion. ECF No. 93 at 18. She contends that the investigation was initiated to render her ineligible for the promotion. ECF No. 93 at 18.

"In order to make out a prima facie case of discriminatory failure to promote, in violation of Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the job for which she applied, (3) she was denied the job, and (4) the denial occurred under circumstances giving rise to an inference of discrimination on a basis forbidden by Title VII." *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000).

Here, the parties agree that a Sergeant position became available in July 2019 and Plaintiff was eligible for the promotion based on her score on the Civil Service Exam (95%). ECF No. 93-17 at 13. Defendants did not conduct interviews for the Sergeant position. ECF No. 93-17 ¶ 47. Defendants promoted Sexton, a male CO who scored 100% on the Civil Service Exam, to the open position of Sergeant. ECF No. 93-17 ¶ 51. Defendants considered the applicant's scores, supervisor feedback, work records, disciplinary records, and prior experience when deciding who to promote. ECF No. 93-17 ¶ 50.

Defendants are entitled to summary judgment on this claim because Plaintiff has not established a prima facie case that Defendants failed to promote her for discriminatory reasons and has not established pretext. "While courts are often hesitant to resolve discrimination claims on summary judgment because 'the employer's intent is typically at issue,' summary judgment is appropriate where the

non-moving party's evidence is 'so scant that a rational jury cannot find in its favor.'" *Gonzalez v. City of New York*, 354 F. Supp. 2d 327, 334 (S.D.N.Y. 2005) (quoting *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86–87 (2d Cir. 1996).

Here, Plaintiff's assertion that she was not chosen for the Sergeant position "due to gender discrimination is conclusory and unsupported by any evidence in the record." *Matthews v. Corning Inc.*, 77 F. Supp. 3d 275, 289 (W.D.N.Y. 2014). "Plaintiff has not provided any allegations that are [ ]discriminatory on their face, nor has she provided any allegations that would raise the logical inference that she was being discriminated against; *i.e.*, allegations that other similarly-situated employees were treated better than her." *Boza-Meade v. Rochester Hous. Auth.*, 170 F. Supp. 3d 535, 554 (W.D.N.Y. 2016).

Plaintiff attempts to establish an inference of discrimination through claims of disparate treatment, *see Mandell*, 316 F.3d at 379 (showing disparate treatment "is a recognized method of raising an inference of discrimination"), and by citing statistics of the low number of women in high positions at the jail. ECF Nos. 1 at 18; 93 at 19. Yet Plaintiff does not allege disparate treatment relating to the promotion itself, and she has not tied the alleged disparate treatment in investigating and disciplining to the promotion. Nor has Plaintiff sufficiently connected general statistics to her own circumstances.

First, Plaintiff alleges in her complaint that "[n]o similarly situated male candidates for promotion were subjected to similar 'investigations' although the discrepancies in record keeping . . . were common among both male and female

correction officers." ECF No. 1 at 18. However, Plaintiff presents no evidence that the male candidates for promotion were similarly situated and were treated differently than her. The male COs who were eligible for promotion were not the same male COs who had alleged discrepancies in their rounds but were not investigated further or disciplined. *Compare* ECF No. 85-8 (civil service eligible list) *with* ECF No. 87 at 15–25 (listing male COs Plaintiff alleges were similarly situated).[3] As such, Plaintiff has not established disparate treatment between herself and the male COs who were eligible for promotion.

Plaintiff attempts to connect the investigation to the promotion by claiming that Defendants conducted the investigation into her rounds specifically to prevent her from obtaining the Sergeant position that would open in the future because she is a woman who was qualified for the position. *See* ECF No. 1 at 18. Yet at the time Defendants conducted the ESRR and investigated Plaintiff (March and April 2019), ECF No. 93-17 at ¶ 67–68, 70, 84, the Sergeant position was not yet available, ECF No. 93-17 ¶ 46.

Plaintiff contends in her complaint that Defendants knew that a "promotional opportunity would occur in August of 2019" at the time they investigated her in April

---

[3] Marvin Tooke and Jason Newman are male COs who are listed on the eligible list, ECF No. 85-8 at 1, and who Plaintiff alleges had discrepancies in their rounds per ESRRs. *See* ECF No. 87 at 16–17. Specifically, Plaintiff argues that Tooke "failed to activate the card reader" on January 7, 2019, and that Newman was spoken to regarding one of his rounds, but neither was disciplined. ECF No. 87 at 16–17. Tooke and Newman both scored 85% on the Civil Service Exam, however, so were not eligible under the County's Civil Service Rules, which say that candidates "ranked above or tied in score with the third candidate from the top of the list" were eligible for promotion. ECF No. 93-17 ¶ 39.

Plaintiff did not allege that any of the seven COs on the eligible list who scored 90%, 95%, or 100% had discrepancies in ESRRs and were not investigated further or disciplined, other than herself.

2019. ECF No. 1 at 18. She has not identified evidence supporting that alleged knowledge, however. Without evidence that Defendants knew that a Sergeant position would open in the future, Plaintiff's argument of discriminatory intent is too speculative.

Plaintiff further contends in her opposition that the investigation would disqualify her from the future Sergeant position. ECF No. 93 at 18. The only evidence she presents in support of this contention is her testimony that someone told her that employees who are under investigation are not eligible for consideration for promotions, but she could not remember who told her that. ECF No. 93 at 18. This hearsay statement from an unknown speaker does not create an issue of fact. *See Garrison v. Am. Sugar Ref., Inc.*, 789 F. Supp. 3d 291, 313 (S.D.N.Y. 2025), *appeal withdrawn*, No. 25-1769, 2025 WL 4065857 (2d Cir. Dec. 17, 2025) ("Inadmissible evidence, such as hearsay that is not otherwise admissible pursuant to the Federal Rules of Evidence, is insufficient to create a genuine issue of fact, absent a showing that admissible evidence will be available at trial.") (internal quotations and citation omitted). Filicetti testified that an investigation would have a "negative effect" on promotion prospects, but did not say it would disqualify candidates. *See* ECF No. 93 at 18.

Finally, Plaintiff argues that "the statistical under-representation of women in the supervisory ranks" supports an inference of discrimination when coupled with her own experience. ECF No. 93 at 19. Yet Plaintiff's own experience, in which a male CO who scored better than her on the Civil Service Exam and was not alleged to have

similar discrepancies in his rounds, *see* ECF No. 87 at 15–25, was promoted over her, does not give rise to an inference of discrimination. Plaintiff is correct that "proof that an employer engaged in a pattern or practice of discrimination may be of substantial help in demonstrating an employer's liability in the individual case." *Chin*, 685 F.3d at 149. "Statistics alone do not suffice to establish an individual disparate treatment claim . . .," however. *Reynolds*, 685 F.3d at 202. Statistics or other evidence of a pattern or practice "cannot relieve the plaintiff of the need to establish each element of his or her claim." *Chin*, 685 F.3d at 147. Plaintiff "must establish [*s*]*he* was the victim of [ ] discrimination." *Reynolds*, 685 F.3d at 202. She has not done so here.

Overall, Plaintiff has not presented sufficient evidence that Defendants' failure to promote her was done under circumstances giving rise to an inference of unlawful discrimination, and she, therefore, fails to establish a prima facie case.

Even if Plaintiff could make out a prima facie case of discriminatory failure to promote, Defendants would still be entitled to summary judgment. The parties agree that an applicant's scores, supervisor feedback, work records, disciplinary records, and prior experience are relevant to promotional decisions. ECF No. 93-17 at 14. Defendants present a legitimate, non-discriminatory reason for failing to promote Plaintiff due to her history of discipline, *see* ECF No. 93-17 ¶¶ 26–35, the investigation, and her lower score. *See, e.g.*, *Matthews*, 77 F. Supp. 3d at 289–90.

The burden then shifts back to Plaintiff to establish pretext. *See McDonnell Douglas*, 411 U.S. at 802. The Court finds that "even if [it] were to find that [Plaintiff] made a prima facie showing, [s]he fails to rebut the [Defendants'] legitimate,

nondiscriminatory reason for hiring [Sexton] instead of h[er], chiefly because [s]he has not demonstrated that h[er] qualifications were comparable to those of the other [ ] candidates." *Patel v. City of New York*, 699 F. App'x 67, 69 (2d Cir. 2017). Indeed, "Plaintiff has failed to offer evidence other than her own subjective belief that Defendants' alleged reasons justifying the failure to promote Plaintiff were, in reality, a pretext for discrimination." *Matthews*, 77 F. Supp. 3d at 291. As such, there is no disputed issue of material fact regarding pretext and Defendants are entitled to summary judgment on Plaintiff's failure to promote claim.

### C. Retaliation under Title VII and the NYSHRL

Plaintiff alleges retaliation under Title VII in claim three and under the NYSHRL in claim five. ECF No. 1 at 19–20, 22–23. She claims that Defendants retaliated against her for engaging in the protected activity of filing EEOC complaints by bringing disciplinary charges against her, bringing criminal charges against her, issuing a press release about her, and threatening to cause her pension to be forfeited. ECF No. 1 at 19.

Defendants argue that they are entitled to summary judgment because the investigation occurred before Plaintiff engaged in protected activity. ECF No. 88-42 at 31. They further argue that the Niagara County District Attorneys' Office brought the criminal charges and the New York Comptroller's Office is solely in charge of pensions, so those are not adverse employment actions attributable to them. ECF No. 8-42 at 32–33. Further, Defendants argue that Plaintiff cannot establish a causal connection between her engagement in protected activity and any adverse

employment action. ECF No. 88-42 at 33–36. Finally, Defendants argue that they had legitimate, non-discriminatory reasons for their actions, and Plaintiff cannot prove pretext. ECF No. 88-42 at 36–37.

In response, Plaintiff argues that Defendants' settlement offer allowing her to keep her job if she withdrew her EEOC complaint establishes retaliation. ECF No. 93 at 22–23. Plaintiff points to deposition testimony, which discusses Defendants' role in the criminal charges. *See* ECF No. 93 at 23–24. Plaintiff further argues that her guilty plea did not constitute an admission of all of the conduct of which she was accused. ECF No. 93 at 24–28.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

"In 2006, . . . the Supreme Court in *White* ruled that Title VII's 'antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)). "Rather, a plaintiff may recover for retaliation by 'show[ing] that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *White*, 548 U.S. at 68) (emphasis omitted).

Under "the NYSHRL . . . '[a] plaintiff claiming retaliation must demonstrate that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025) (quoting *Qorrolli*, 124 F.4th at 122).

Here, Plaintiff engaged in protected activity when she filed three complaints with the EEOC in April, June, and August 2019. ECF No. 93-14 ¶¶ 105–107. She alleges that Defendants' actions of "pursuing disciplinary and criminal charges against her" and issuing the press release, were done in retaliation. ECF Nos. 1 at 19; 93 at 21–22. Those actions could deter a person from engaging in protected activity, and Plaintiff points to evidence creating an issue of fact on Defendants' control over her criminal charges. *See* ECF No. 93 at 24 (citing Filicetti's deposition testimony).

Regarding a causal connection, the Second Circuit "ha[s] recently reaffirmed that 'proof of a causal relationship between the protected activity and the adverse action[ ] can be established either (1) directly, through evidence of retaliatory animus toward the plaintiff, or (2) indirectly, through circumstantial evidence.'" *Edelman*, 141 F.4th at 48 (quoting *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 239 (2d Cir. 2024)). "[S]ummary judgment in favor of an employer on this prong should be granted only sparingly 'because careful scrutiny of the factual allegations may reveal

circumstantial evidence to support the required inference of discrimination [or retaliation].'" *Id.* (quoting *Konits v. Valley Stream Cent. High Sch. Dist.*, 394 F.3d 121, 124 (2d Cir. 2005)).

Plaintiff alleges in her complaint that Defendants told her of their intent to bring disciplinary and criminal charges against her less than two months after she filed an EEOC charge. ECF No. 1 at 19. She filed her first charge with the EEOC on April 22, 2019, ECF No. 93-17 ¶ 105, and the meeting during which Defendants informed her of their intent to pursue disciplinary and criminal charges occurred on June 11, 2019, ECF No. 93-17 ¶ 87. Filicetti told Plaintiff that Defendants would accept her resignation in lieu of their pursuit of disciplinary and criminal charges. ECF No. 93-17 ¶ 87 (response); *see also* ECF No. 85-16 (interview transcript). Defendants thereafter served Plaintiff with a Notice of Discipline on July 8, 2019. ECF No. 93-17 ¶ 89, and she was arrested on August 27, 2019, ECF No. 93-17 ¶ 96. The timeline of events and Filicetti's comments support a causal connection between Plaintiff's EEOC complaint and the disciplinary and criminal charges. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013) ("[A] plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage.").

Plaintiff also attempts to establish a causal connection through the proposed settlement agreement offer from Defendants. ECF No. 93 at 23. The settlement offer supports a causal connection because in the offer, Defendants agreed "not to pursue

criminal charges against" Plaintiff, and agreed to let her keep her job, in exchange for, *inter alia,* Plaintiff withdrawing her EEOC complaints "with prejudice." ECF No. 85-19 at 2.

Defendants argue in reply that settlement agreements are inadmissible under Federal Rule of Evidence 408. ECF No. 96 at 18 n. 11. "The principles governing admissibility of evidence do not change on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). Under Rule 408, compromise offers like the one in question are inadmissible "to prove or disprove the validity or amount of a disputed claim," but may be admissible "for another purpose." Fed. R. Evid. 408.

The Court finds the settlement offer admissible for the purpose of establishing a retaliatory intent. *See Calise v. Casa Redimix Concrete Corp.*, No. 20 CIV. 7164 (PAE), 2022 WL 355665, at *4 (S.D.N.Y. Feb. 4, 2022) ("[E]ven if the letter were held subject to Rule 408, that would not prevent it from receipt at trial as a basis for a retaliation claim."). "[I]t is well established that 'Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim.'" *Williams v. Regus Mgmt. Grp., LLC*, No. 10 CIV. 8987, 2012 WL 1890384, at *4 (S.D.N.Y. May 15, 2012) (quoting *Uforma/Shelby Bus. Forms, Inc. v. NLRB,* 111 F.3d 1284, 1293–94 (6th Cir. 1997)). Here, the settlement offer is related to the alleged gender discrimination, and Plaintiff seeks to use it to prove a different claim, the alleged retaliation that occurred when Defendants brought the Notice of Discipline, pursued the matter criminally, and issued a press release announcing her arrest. *See, e.g., Williams*, 2012 WL

1890384, at *4; *Carr v. Health Ins. Plan of Greater New York, Inc.*, No. 99 CIV. 3706 (NRB), 2001 WL 563722, at *4 (S.D.N.Y. May 24, 2001); *Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998) ("such [settlement] correspondence can be used to establish an independent violation (here, retaliation) unrelated to the underlying claim which was the subject of the correspondence (race discrimination)").

Moreover, the purpose of Rule 408 of promoting settlements is not furthered by excluding the type of settlement offer here—one which seemingly contains an improper threat of criminal prosecution to gain an advantage in a civil matter. *See generally Internet Mgmt. Info. Sys., Inc. v. Hanes Morgan & Co.*, 2000 WL 193127, at *4 (S.D.N.Y. Feb. 16, 2000) ("A threat to instigate a criminal prosecution . . . is an improper means of persuading a party to enter into a contract.").

In sum, the settlement offer is admissible for the purpose for which Plaintiff attempts to use it and, as such, there is an issue of fact regarding a causal connection between Plaintiff's filing, and refusal to withdraw, EEOC charges and Defendants' actions of issuing the Notice of Discipline, pursuing criminal charges, and issuing the press release.

Defendants argue that they had a legitimate, non-retaliatory reason for pursuing charges against Plaintiff and issuing a press release—that Plaintiff admitted to falsifying records. ECF No. 88-42 at 36–37. Defendants further argue that Plaintiff cannot establish pretext. ECF No. 88-42 at 37. "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the

employer's proffered legitimate, nonretaliatory reasons for its action." *Zann*, 737 F.3d at 846.

Here, Plaintiff can present evidence of the settlement offer to attempt to establish weakness and inconsistencies in Defendants' stated reason. Specifically, she can attempt to show that Defendants would not have issued the Notice of Discipline or pursued criminal charges if she had not filed EEOC charges or if she had withdrawn them. There is an issue of fact regarding retaliatory intent, so Defendants are not entitled to summary judgment on Plaintiff's retaliation claims.

**D. Alleged discrimination by individuals under the NYSHRL**

In her seventh cause of action, Plaintiff alleges violations of the NYSHRL by individuals Filicetti and Payne. ECF No. 1 at 26–28. Defendants argue that Plaintiff cannot proceed on her individual claims because her claims against her former employer fails. ECF No. 88-42 at 39–40. Alternatively, Defendants argue that Plaintiff cannot show that Filicetti and Payne aided and abetted discriminatory or retaliatory conduct because she alleges that they were the ones who actually engaged in the conduct at issue, so did not aid anyone. ECF No. 88-42 at 40. In response, Plaintiff argues that Filicetti ordered the investigation into her rounds before Boddecker made a report to Kolbe, and that Filicetti and Payne together decided to pursue criminal charges against Plaintiff. ECF No. 93 at 28.

"[U]nder the NYSHRL, an individual defendant may be liable for discrimination, . . . where the defendant aided and abetted the unlawful discriminatory acts of others." *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 288–89

(S.D.N.Y. 2024). The NYSHRL "makes it unlawful 'for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so.'" *Id.* at 289 (quoting N.Y. Exec. L. § 296(6)). "The presence of one or more actionable discrimination claims is . . . a necessary predicate for aider and abettor liability." *Id.*

Here, because there are issues of fact regarding Plaintiff's disparate treatment discrimination claims involving disciplining discrepancies in rounds and her retaliation claims against all Defendants, Plaintiff can proceed on her NYSHRL claims against the individual Defendants. *See, e.g., Boubacar v. Buffalo Fine Arts Acad.*, No. 17-CV-00016-LJV-HKS, 2024 WL 4884381, at *14 (W.D.N.Y. Oct. 31, 2024), *report and recommendation adopted,* No. 17-CV-1092-LJV-HKS, 2024 WL 4882262 (W.D.N.Y. Nov. 25, 2024). Plaintiff has presented evidence that Filicetti and Payne ordered others to conduct the investigation into her rounds and pursued criminal charges with the District Attorney's Office. ECF No. 93 at 28. As such, the individual Defendants are not entitled to summary judgment. *See Boubacar,* 2024 WL 4884381, at *14 ("each of the individual defendants either participated in the allegedly discriminatory and retaliatory actions that underlie [plaintiff's] claims under the NYSHRL, or they allegedly failed to take remedial actions in response to his complaints about such actions. This is sufficient to give rise to aider-and-abettor liability.").

Additionally, Defendants' argument that Filicetti and Payne were the only ones who committed the alleged acts, ECF No. 88-42 at 40, does not entitle them to

summary judgment. While "there is a question as to whether an individual may be held liable for aiding and abetting their own conduct," *Lee*, 751 F. Supp. 3d at 290, in this case there remains an issue of fact regarding whether Filicetti and Payne were aiding and abetting others' discriminatory conduct. The evidence establishes that Moll, Boddecker, and Kolbe were also involved in the investigation, and that Harrer participated in the criminal investigation. *See* ECF Nos. 93 at 28; 93-17 ¶¶ 77–81, 84, 97–98. As such, Defendants are not entitled to summary judgment.

**E. 1983 Claim**

Plaintiff alleges a violation of 42 U.S.C. § 1983 by Filicetti and Payne. ECF No. 1 at 23–26 (claim six). Defendants argue that Plaintiff's 1983 claim improperly alleges conduct by Filicetti and Payne in their official capacities. ECF No. 88-42 at 37–39 (relying on *Bello v. Cnty. of Niagara*, No. 12-CV-799S, 2014 WL 5432498, at *3 (W.D.N.Y. Oct. 27, 2014)). In response, Plaintiff "withdraws her Section 1983 claims against Defendants Filicetti and Payne." ECF No. 93 at 29.

As such, Defendant's motion for summary judgment is granted with respect to Plaintiff's 1983 claim.

## CONCLUSION

After careful review of the cross motions for summary judgment, the Court concludes that there are issues of fact that should go to the jury regarding Defendants' alleged discriminatory intent related to Plaintiff's claims of disparate treatment discrimination under Title VII and the NYSHRL for investigating and disciplining her errors in rounds. Plaintiff is not entitled to summary judgment on

the issue of disparate treatment, and Defendants are also not entitled to summary judgment on these claims.

There is also an issue of fact relating to Defendants' alleged retaliatory intent, so Defendants are not entitled to summary judgment on Plaintiff's claims of retaliation under Title VII and the NYSHRL.

Defendants are entitled to summary judgment on Plaintiff's claims of disparate treatment relating to the working conditions (temperature and access to break room), and her claims of disparate treatment for allegedly preventing women from joining special teams and assignments. Defendants are also entitled to summary judgment on Plaintiff's failure to promote claim of discrimination under Title VII because Plaintiff has provided no evidence of discriminatory intent in Defendants' decision to promote a male CO who scored higher on the Civil Service Exam. Finally, Plaintiff withdraws her 1983 claim, so it is dismissed.

As such, for the foregoing reasons, it is hereby

ORDERED that Plaintiff's motion for partial summary judgment, ECF No. 85, is DENIED, and it is further ORDERED that Defendants' motion for summary judgment, ECF No. 88, is GRANTED IN PART and DENIED IN PART.

Plaintiff's claims of discrimination under Title VII and the NYSHRL related to the alleged disparate treatment in investigating and disciplining discrepancies in rounds, her claims of retaliation under Title VII and the NYSHRL, and her individual claims against Filicetti and Payne for allegedly aiding and abetting discrimination and retaliation shall proceed to trial.

The Court will contact the parties to schedule a pre-trial conference.

SO ORDERED.

DATED: November 24, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge